Argued January 12; affirmed March 28, 1939

# BOARDMAN *v.* OTTINGER, ET UX.

(88 P. (2d) 967)

Department 1.

*George M. Roberts*, of Medford (Wm. M. McAllister, of Medford, on the brief), for appellants.

*O. H. Bengtson*, of Medford, for respondent.

ROSSMAN, J. This is an appeal by the two defendants, who are the proprietors of an outdoor natatorium located near Ashland, from a judgment of the circuit court, based upon the verdict of a jury, in favor of the plaintiff. The action which terminated in this judgment was predicated upon charges that after the plaintiff had entered the pool as a patron for hire, the defendants negligently permitted four young men who were also in the pool to play a game of catch with a large heavy ball in such a careless and violent manner that the ball with great force struck the plaintiff, thereby inflicting the injury for which she seeks damages.

The defendants' pool, 45 by 90 feet in size, is constructed of concrete. Since its floor is an inclined plane the water in one end is deeper than in the other. At the deeper end are facilities for diving, and along the two sidewalls of this end is a narrow ledge four feet under the surface of the water upon which bathers can stand. They hold themselves in position by resting their hands in a nearby trough. After the plaintiff had swum in the deeper part for about thirty minutes she proceeded along the ledge towards the shallow part preparatory to leaving. As she crept along the ledge she faced the wall and, according to her testimony, "was pretty much occupied with hanging on." When about to leave the water she tarried a moment and turned her face in the direction of the springboard. At that moment she was struck in the face with the ball with such force that her head was knocked against the concrete wall. At that time the four young men were playing a game of catch with the aforementioned ball 15 inches in diameter and weighing a pound and a half, which was a part of the equipment provided by the

defendants. The game had been in progress for about ten minutes and the players were in the shallow part of the pool. According to a witness for the plaintiff, they threw the ball with great force. The plaintiff was struck when the intended recipient missed the catch. The plaintiff swore that since she had confined her swimming to the deeper part of the pool and had been watching the diving she had not observed the game of catch and its players. She also swore that the ball was not in use when she entered the place. Both defendants and a lifeguard were present that evening. The lifeguard was only a few feet from the place where the plaintiff was struck.

The defendants' first assignment of error is based upon a ruling which denied their motion for a nonsuit, and the second upon a ruling which denied their motion for a directed verdict. In support of these assignments of error, the defendants point out that it was their duty to employ nothing more than the care of a reasonably prudent person, and that they were not the insurers of the safety of their patrons. They argue that the four young men were responsible, intervening agents, and contend that none of the four was negligent. Further, they argue that if any one of the four was negligent, he, and not the defendants, was responsible for its consequences.

A witness for the plaintiff, referring to the four young men engaged in the game, testified: "They were throwing it as hard as they could throw it." Neither the defendants nor the guard remonstrated with the players. One of the two defendants testified: "There have been lots of people hit with the ball." One of the four young men was asked and answered as follows: "You bled at the nose yourself, did you not, when throwing that ball there earlier? A. Yes." The

plaintiff testified that after the ball had. struck her the guard inquired about her injury, and said, "Oftentimes they have to take the ball away from them when they get to playing too rough." She was then asked if the guard made any statement concerning the present instance, and replied, "He said they should have taken the ball away from them." Testimony favorable to the defendants indicated that the ball was not thrown with force, that no boisterous conduct was taking place, that there was no occasion for stopping the game, and that the plaintiff had stood in the place where she was struck for about five minutes before the ball hit her. They contend that she must have seen the game. Those who gave this testimony, however, admitted that anyone struck in the face with the ball would feel "a sting." The guard admitted, "I imagined it caused her some sting, hitting her head on the side of the pool. I imagined it possibly hurt her, hitting it against the side." No witness for the plaintiff saw the injury-inflicting throw, but the lifeguard, as a witness for the defendants, described its course as "an arc." The space between the thrower and the intended catcher was about 35 feet.

■ From the Restatement of the Law of Torts, § 348, we quote:

"public utility or other possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be done, and (b) protected the members of the public by (i) controlling the conduct of the third persons, or (ii) giving a warning adequate to

enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from the public utility.''

That statement is in accord with our decisions: *Peck v. Gerber*, 154 Or. 126, 59 P. (2d) 675, 106 A. L. R. 996; and *Hill v. Merrick*, 147 Or. 244, 31 P. (2d) 663. See also *Curtis v. Portland Baseball Club*, 130 Or. 93, 279 P. 277, and *Johnson v. Hot Springs Land & Imp. Co.*, 76 Or. 333, 148 P. 1137, L. R. A. 1915F, 689.

■ Accordingly, since the defendants owed the above duty, their argument concerning a responsible, independent agency (by which term they refer to the ballplayers) is without merit, for it was their duty to protest the plaintiff against injury from such an agency if, through the exercise of reasonable care, they could have discovered the wrongful conduct and taken the appropriate course. The fact that the negligent player is also liable does not excuse the defendants from their liability. The jury evidently believed that the ballplayers were engaged in a course of conduct which endangered the safety of the other patrons of the pool to such an extent that the defendants should have required the players to be careful. If the players were throwing the ball with the violence described by the testimony favorable to the plaintiff, an inference was warranted that the defendants should have taken some precautions. Evidently the jury believed the plaintiff's witnesses. In view of this circumstance and the above principle of law, we believe that the circuit court properly denied the motions for a nonsuit and a directed verdict.

■■ The third assignment of error challenges an order which overruled a demurrer to the complaint which was based upon a contention that the complaint failed

to state a cause of action. In seeking to support this assignment of error, the defendants mention paragraphs IV, V, VI, VII, XVI and XVII of the complaint. The first four of these paragraphs allege that after the plaintiff had entered the pool the defendants permitted the four young men to engage in the game of catch in the shallow part, and that when the plaintiff was about to leave "said ball was thrown at a high and dangerous rate of speed" by one of the players to another in such a manner that the plaintiff was struck. The averments continue that the game was played in a "highly dangerous and negligent manner" under the observation of the defendants. Paragraph XVI avers: "It was the duty of said defendants in the operation of said pool to use all reasonable care to prevent the invitee patrons from carelessly playing in said pool, and the said defendants could have, by the exercise of reasonable care, prevented said boys, as aforesaid, from playing in the highly dangerous manner aforesaid." Paragraph XVII avers that notwithstanding this duty, "the defendants permitted such place of amusement to be so operated that the same was dangerous." Defendants argue that the phrase "at a high and dangerous rate of speed" is a legal conclusion and constitutes no charge of any kind. Although the attacked phrase contains a legal conclusion, it also bears a statement of fact. Very likely it expresses the pleader's conception of the speed of the ball as well as she was able to state it. It appears to us to be plain and concise language within the contemplation of § 1-604, Oregon Code 1930. This court has held that a statement of the facts upon which the claim of negligence is based, accompanied with an averment that the conduct constituting those facts was negligent, suffices: *Weinstein v. Wheeler*, 135 Or. 518, 295 P. 196, 296 P. 1079. It will be observed that

the complaint alleges the circumstances which the plaintiff claims called for action upon the defendants' part, and avers that the defendants' failure to act was negligent. We believe that this suffices and, accordingly, conclude that the court properly overruled the demurrer.

The remaining two assignments of error challenge two instructions given to the jury. The first of these concerned the defense that the plaintiff had assumed the risk of being injured; and the second concerned the defense of contributory negligence. Both of the challenged instructions were lengthy, and the criticism in each instance concerns only a part of the instruction. The part of the instruction concerning assumption of risk follows:

"In other words, she may have known of the game that was being played there and be conversant with the conditions as they were, whatever they were, but in order to become responsible for the results to herself she must have known—it must appear to the satisfaction of the jury that she knew the danger to herself and the peril that would naturally result."

The part concerning contributory negligence is the following:

"You are further instructed that it is a rule of law that the plaintiff, to be guilty of contributory negligence, must have knowledge of the danger existing, which must be shown by a preponderance of the evidence, and the plaintiff must have realized the danger, which must also be proved by a preponderance of the evidence. It is the duty of the jury to determine what constitutes reasonable care under all of the circumstances of the case."

The defendants criticize these instructions upon the ground that they accepted as the basis of the test the

plaintiff's knowledge and her conduct rather than the knowledge and conduct of a reasonably prudent person under similar circumstances.

The instructions are plainly the result of careful preparation. They are comprehensive, display careful arrangement, and are couched in language which the jurors should have had no difficulty in understanding. The instruction concerning assumption of risk begins as follows:

"If the plaintiff upon entering the pool or remaining in the pool knew and it was apparent to her, or as a fairly reasonably prudent person it should have been apparent to her, that she was voluntarily going into a place of danger where injury to herself was likely to occur, then and in that event she would be deemed to have assumed the risk that was necessarily incident to whatever was going on there."

Later, in summing up this charge, the jury was informed:

"She must not only have known of the game going on there, but she must have known or had reason to know, as a reasonably prudent person, what the danger was that would result to her."

The part concerning contributory negligence above quoted is only a minor part of the instruction. We shall not quote all of the rest of the instruction, but other parts are the following:

"In other words, the duty is upon the plaintiff to use her own powers of observation, her own faculties and judgment, in order to avoid danger, even though it results from the negligence of the other party that is apparent to her or in the exercise of ordinary care and prudence should have been apparent to her. * * * I instruct you further that you must consider her action in the light of a reasonably prudent person, be-

cause she is charged with the same degree of care for the protection of her own safety that a reasonably prudent person would be under like and similar circumstances and conditions, and that if you find by a preponderance of the evidence that a reasonably prudent person standing in the position which she claims she stood, with full power of observation, seeing this game as it was being played, seeing this ball and having an opportunity to so observe, if there were hazards and dangers to be anticipated from the manner in which said game was being so played at such said time, would have changed her position to a position of safety or removed herself  *  *  *  then under such circumstances and conditions the plaintiff would be guilty of contributory negligence.''

■■ The instructions, through the repeated use of the term ''a person of ordinary care and prudence,'' made it clear that the test by which the plaintiff's conduct was to be judged was not the plaintiff's knowledge of the situation and her reactions thereto, but that of a standard individual. One part of the instruction which we have particularly in mind is the following:

''Now, that is the yardstick by which we measure the duty of individuals and their liability if there was any violation of that duty. That is to say—what a person of ordinary care and prudence would have done under these conditions and circumstances, because that is what we must each do, and what each of the parties in this case should have done in order to keep themselves free from liability for negligence.''

The defendants do not criticize the instructions in their entirety.

■ It has been many times stated that each sentence need not within itself contain a complete delineation of the law applicable to the subject-matter treated by it. If their sentences and paragraphs are so phrased that they qualify and relate to one another, the instructions

may be broken up into convenient parts. Such was done in the present instance. Our reading of the instructions convinces us that the jury was plainly told—in fact, repeatedly told—that unless the plaintiff's conduct conformed to the standard of a reasonably prudent person it was the jury's duty to return a verdict for the defendants. The criticism of the instructions, in our opinion, is without merit.

The above concludes a review of all of the assignments of error. We believe that the record is free from error. The judgment of the circuit court is affirmed.

RAND, C. J., and KELLY and BEAN, JJ., concur.