191 So. 633

**GREAT ATLANTIC & PACIFIC TEA CO.**
**v. KELTNER.**

**6 Div. 406.**

Court of Appeals of Alabama.

April 18, 1939.

Rehearing Denied June 6, 1939.

J. L. Drennen, of Birmingham, for appellant.

Harsh, Harsh & Hare, of Birmingham, for appellee.

**7**

SAMFORD, Judge.

The plaintiff's wife was an invitee in the store of defendant and, while there, was seriously injured by being struck by a rock, or other missile of a similar nature, thrown by a young man by the name of McEwen, from the sidewalk in front of the store.

There is no question as to the relationship existing between the plaintiff's wife and the defendant at the time of the injury, and if the plaintiff is entitled to recover, the amount of the recovery is not seriously controverted.

Mr. Holliday was the manager of defendant's store, and was its alter ego. Holliday and a boy, by the name of McEwen, had an altercation in the store over a personal matter, and Holliday forcibly ejected McEwen from the store on to the sidewalk. What followed as a basis for recovery against the defendant is stated in the testimony as follows:

"So, Mr. Holliday gave him a shove and kind of raised his foot like he was going to kick him, but he didn't do it, he didn't kick him. And so, the boy got out, and Mr. Holliday closed the door and put on the slip latch. So, the boy pushed the door, you know, and just kicked and carried on out there until he loosened the latch a little, but he didn't get in right then. So, Mr. Holliday told a boy named Brown, I believe Henry Brown or Pete Brown, he says: 'I am going to let you off right now, and you go out and beat hell out of that boy,' that is the words he used, I hate to use that language but that is what it was.

I said, 'Mr. Holliday, don't do that; somebody will get hurt;' I said, 'call the law;' he said, 'No, I don't want to call the law, because I don't want to have any trouble with his parents.' He opened the door, and the boy went out and knocked Donald down several times. Mr. Holliday opened the door to let Brown back in and while he was doing that the boy had immediately run across the street and picked up a piece of broken sidewalk and ran back and threw it at Mr. Holliday, and it just glanced his arm, just enough to bring a little streak of blood, like a little pin scratch, and hit me. Brown hit McEwen outside three times; that was before Mr. Holliday opened the door of the store to let Brown back in. The fight took place outside at the door in just a short time. During that time Mr. Holliday was standing right inside of the door. He was looking out and it was taking place in his sight and his hearing and Brown was doing what Mr. Holliday had told him to. * * * I was looking at him and then Donald McEwen picked up something off the ground to throw. He picked up a piece of concrete, broken sidewalk, and threw it. It came through the door of the store just as Mr. Holliday opened the door to let Brown back in and it hit me. That blow inflicted the injury that I went to Doctor Vance to be treated for. * * * McEwen threw the rock after I asked Mr. Holliday to call the law. McEwen was right out in front of the store on the sidewalk when Mr. Holliday sent Brown out there to whip him. He was on the outside of the store then. They scuffled there between themselves at the door and then McEwen went across the street and picked up the rock, and ran back across the street and threw it in the store just as Mr. Holliday let Mr. Brown back in, while the door was standing ajar. This was after Holliday had sent Brown out to fight him. He was in plain sight coming back across the street. The front of the grocery store was glass and you could see him approach, and Mr. Holliday was looking right at him. McEwen had the rock in his hand as he approached and he was running toward the store with the rock already up in his hand as he approached the store. Mr. Holliday did not say anything to him as he came up brandishing that rock and he did nothing, so far as I can say, to stop him or secure the door and he did not take any step of any kind or degree whatso-

**8**

ever to protect me then, and he did not take any step whatsoever to prevent the boy from coming in through that door with the rock. Mr. Holliday was standing out in front of the door. He did not close the door to keep McEwen from hurting him. He made no effort to keep McEwen from coming in with the rock. I saw him and Mr. Holliday saw him as he ran across the street with the rock in his hand, and the man that Holliday had sent out to fight, Brown, was coming in the door, and he took no step and made no effort, said nothing and did nothing either to protect me or to prevent the man from throwing the rock, and he would not call the police when I asked him to."

Henry Brown, a witness for the defendant, testified that: "He (McEwen) went across the street and throwed some rocks at me, I don't know how many, several. * * * I had already opened the screen door before he started throwing rocks."

The testimony of defendant's manager was contradictory to the testimony of plaintiff, in so far as it tended to inculpate him or the defendant, but we do not comment upon this contradiction further than to say, that if, under any phase of the testimony, the plaintiff was entitled to recover, the questions of evidence arising by reasons of these contradictions would be for the jury, and not for us to pass upon.

The rulings of the lower court on the trial of the case were based upon the announcement of a rule as set out in Restatement of the Law of Torts Second Volume, § 348, as follows:

"A public utility or other possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have

"(a) discovered that such acts were being done or were about to be done, and

"(b) protected the members of the public by

"(i) controlling the conduct of the third persons, or

"(ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from a public utility."

We think, with due deference to the editors of the above rule, that the rule as there stated is too broad in its scope and places too great a burden upon a public utility or possessor of business premises.

The defendant, as the owner and possessor of the premises where the plaintiff's wife was an invitee at the time of the injury, was not an insurer of the person, and was under duty to the plaintiff's wife only to use ordinary care to prevent injury to her person. 45 C.J. 680 (51).

The true rule applicable to this case and the facts as hereinabove stated is: To make one answerable to an invitee for failing to furnish protection to the invitee upon his premises from the unlawful conduct of an outsider—third person—such an one so sought to be held, must have seen, or known, or circumstances at the time must be such as to make it reasonably appear that preventive effort was necessary to protect its invitee. Not only this, but the owner of the premises must have the present ability to furnish protection, or realizing the danger, and lacking the ability to furnish protection, if such invitee was unaware of his impending peril, he should warn the invitee of the danger, so that the latter might take steps to avoid injury.

While we have no direct authority upon the question, we feel that the holdings in the cases of Connell's Ex'rs v. Chesapeake & Ohio Ry. Co., 93 Va. 44, 24 S.E. 467, 32 L.R.A. 792, 57 Am.St.Rep. 786; Tomme v. Pullman Co. et al., 207 Ala. 511, 93 So. 462; Southern Ry. Co. v. Carter, 164 Ala. 103, 51 So. 147; Lord v. Sherer Dry Goods Co., 205 Mass. 1, 90 N.E. 1153, 27 L.R.A., N.S., 232, 137 Am.St.Rep. 420, 18 Ann. Cas. 41; declare the principles as above set out.

Until the danger of the plaintiff's wife became apparent, or the circumstances were such as the exercise of ordinary care called for some action on the part of the defendant, there can be no recovery. Great Atlantic & Pacific Tea Co. v. Cox, 51 Ga. App. 880, 181 S.E. 788.

Under the rule, as above stated, the testimony for the plaintiff as hereinabove set out is not sufficient to carry the burden of proof, which would authorize the plaintiff to recover.

There was a plea of contributory negligence in short by consent. The facts and circumstances surrounding the accident

and claimed by the plaintiff to entitle him to a recovery were equally known to his wife, and if there was such danger as she claimed, apparent to the defendant, such danger was likewise apparent to the plaintiff's wife, and there is an entire absence of evidence tending to show that she made any effort to avoid same.

The rulings of the trial court on the pleadings and the evidence were not in accord with the foregoing opinion. Without discussing these rulings in detail, we hold that the trial court specifically committed error in refusing to give, at the request of defendant, the general affirmative charge, and for these errors, the judgment is reversed and the cause is remanded.

Reversed and remanded.

RICE, Judge (dissenting).

This appeal is from a judgment in appellee's favor in a suit brought by him against appellant—the owner and operator of a storehouse, where it sold merchandise, including groceries—seeking to recover damages for the loss of the services, society and comfort of his wife, Elizabeth Keltner, as well as for his expense, trouble and inconvenience in having her treated —all occasioned by her having been injured through appellant's negligence, or that of its responsible agents. or servants, while she was a customer in said storehouse or place of business.

The learned trial court charged the jury, orally, among other things, as follows: "It is the law, gentlemen, that if a keeper of a store holds itself out to the public for entry for business purposes, that its operators, those who are in charge of and who run the store, are under the duty of exercising reasonable care towards avoiding any injury to those who are customers in the store, not only injuries from a dangerous condition of the premises, *but also to exercise reasonable care to avoid injuries to patrons from the harmful acts of third persons.*" (Italics supplied by us.)

Due exception was reserved to the above quoted excerpt from the trial judge's careful and thoughtful charge to the jury; and it is here vigorously argued that the same constituted error which should cause the judgment to be reversed.

It is, we believe, judicially known that "The American Law Institute's Restatement of the Law" is the product of a nation-wide effort of the legal profession to simplify, clarify and unify our common law.

The American Law Institute, which has prepared these Restatements, has been composed of a large number of the leading jurists, teachers and practitioners of the American Bar, including Chief Justice Hughes of the United States, Elihu Root, George Wharton Pepper, George Wickersham, Judge Learned Hand, our own Chief Justice Anderson, and many others distinguished in the legal field.

Just as Blackstone reduced to systematic written form the common law of England, the American Law Institute has undertaken to restate the general principles of the common law of today, as it has been developed and molded by the decisions of our State and Federal Courts, during a period of 150 years.

The Restatements are *not* mere textbooks. They are *not* digests. They are *not* encyclopedias, treatises nor monographs. They are enumerations of the principles of the common law as deduced from a careful analysis and study of pertinent decisions, always numerous and often conflicting. Or at least it is so claimed for them; and the names connected with their preparation—only a few of which we have given hereinabove—plus our study of those so far produced, lead us to accept at face value the claim.

And in the second volume of the Restatement of the Law of Torts, at page 953, we find the following, to-wit:

"A public utility *or other possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the* accidental negligent or *intentionally harmful acts of third persons* or animals *if the possessor by the exercise of reasonable care could have*

"(a) *discovered that such acts were being done or were about to be done, and*

"(b) protected the members of the public by

"(i) *controlling the conduct of the third persons,* or

"(ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from a public utility." (Italics supplied by us.)

10

Before we undertake to set forth the "authorities" upon which the above quotation from the Restatement of the Law of Torts—if revolutionary, as claimed by appellant's able counsel, when applied to litigation in our State, only so because it appears not heretofore to have been invoked—was probably based, it is perhaps well that we give, briefly, the gist of some of the "comments" following said quotation in the published volume where it appears.

Not that it is presently important, but merely in order that one may see that the results of some of the cases, the decisions of our appellate courts, which have been cited on behalf of appellant's contentions in the present suit, might have been different had the pleadings been differently drawn, it is well to note that the expression "third persons" in the quotation above set forth from the Restatement of the Law of Torts is said to include "the servants of the * * * possessor (store owner and operator) acting *outside* of the course of their employment." And of course it includes "trespassers."

It is said further—though we have never heard of a contention being made to the contrary—that a "possessor of land (storekeeper and proprietor, we interpolate) who holds it open to the public for entry for his business purposes is not required to *insure the safety of his patrons* against the wrongful acts of third persons." (Italics ours.)

"He is, however," it is commented, "under a duty to exercise *reasonable care* to give them protection." (Italics ours.)

And, further: "In many cases a warning is sufficient * * *. If, however, the possessor is not entitled to assume that a warning will be sufficient, he is required *to exercise reasonable care to use such means of protection as are available.*" (Italics ours.)

Now why was the law "restated" as we have quoted it hereinabove?

In the "syllabus by the court" in the case of Great Atlantic & Pacific Tea Co. v. Cox, 51 Ga.App. 880, 181 S.E. 788, 789, a case decided by the Court of Appeals of Georgia in 1935, we find this: "If the conduct of * * * third persons * * * is such as to cause any reasonable apprehension of danger to other customers or invitees because of such conduct, it is the duty of the proprietor to interfere to pre-vent probable injury; and a failure so to interfere, and consequent damage, will subject such proprietor to an action for damages for such negligent failure to prevent the injury."

We apprehend no difference between the duty of the owner and operator of a store, where the public is invited to come and trade, for the owner and operator's profit, and the duty of the owner and operator of a theatre, or other place of amusement, where the public is invited to come, for a consideration to the owner, for its amusement and recreation, in so far as the protection of the customers or patrons is concerned. And in the opinion in the case of Southern Enterprises, Inc. of Texas v. Marek, a case decided by the Court of Civil Appeals of Texas in 1934, and reported in 68 S.W.2d 384, 387, we find this: "Though *willful* or negligent act of third person intervenes and contributes to guest's injury, recovery may be had from theater proprietor where such act *should have been foreseen.*" (Italics ours.) And this statement, by the way, was quoted by the Texas Court from an opinion by the Supreme Judicial Court of Maine, Hawkins v. M. & N. H. T. Co., 132 Me. 1, 164 A. 628, duly cited by the Texas Court.

And in this same opinion by the Court of Civil Appeals of Texas, Ruling Case Law was cited, and quoted from, to the effect, viz.: "The duty of proprietors of places of public amusement or resort to protect their patrons *also applies as against the acts of others than agents and servants of the proprietor or manager.*" 26 R.C.L. title Theatres, Shows etc. Sec. 19 —though it seems that the Section that *should* have been cited was 18.

Again, the Court of Appeals of Georgia, in the case of Savannah Theatres Co. v. Brown, 36 Ga.App. 352, 136 S.E. 478, held to the effect: "Petition for injury to patron, shoved on theater stairway by boys *known by proprietor* to be boisterous and hilarious, held good against demurrer." (Italics ours.)

And this same Court of Appeals of Georgia, in what seems to us a very well considered opinion, in the case of Moone v. Smith et al., 6 Ga.App. 649, 65 S.E. 712, 713, delivered itself in this wise: "This duty [the duty, we interpolate, to a customer invited, impliedly, to be upon the premises of defendant for defendant's profit] was to use ordinary care and diligence to protect the plaintiff while he was

in the defendant's place of business lawfully engaged, from injury, injury either from the unsafe condition of the premises themselves * * * *or injury from any vicious or improper persons who were in the room either as customers or otherwise."* (Italics ours.) And see, as supporting the principle just quoted—the same, so far as we can observe, as that announced in the excerpt from the trial court's oral charge set forth in the second paragraph of this opinion—the following additional cases and authorities, viz.: Eyerly v. Baker, 168 Md. 599, 178 A. 691; Peck v. Gerber et al., 154 Or. 126, 59 P.2d 675, 106 A.L.R. 996; Gallagher v. Kroger Grocery & Baking Co., Mo.App., 272 S.W. 1005; 45 C. J. 825.

So we arrive at the conclusion that the quotation, supra, from the American Law Institute's Restatement of the Law of Torts is, and ought to be, the law of our State.

It follows that the portion of the trial court's oral charge to the jury trying this case, as set out in the second paragraph of this opinion, stated the law correctly; and the exception to same is held to be unavailing.

Of course the storekeeper, or other keeper of premises where the public is invited to come for the owner's benefit, is not liable in damages for injuries to an *invitee* as the result of the act of a third person when the injury comes unexpectedly from the sudden, unpredictable assault or wrong doing of said third person. This principle is illustrated, in the case of a common carrier of passengers, maintaining a station or depot where its prospective passengers are invited to come and to be, while awaiting transportation, by the decision in Southern Railway Company v. Hanby, 183 Ala. 255, 62 So. 871, a case much relied upon by appellant, here. And we observe that the fact that this case involved a common carrier of passengers does not preclude the holding from applicability to an owner and operator of a storehouse, as here; the difference in duty required of the two being, as we understand, merely one of *degree*—the principle *of* the duty being one and the same.

For the owner and operator of the store to be liable in damages for the injury inflicted upon its customer by a third person it must have been negligent; and before it could be negligent it must have had notice that said injury would probably be inflicted unless it took reasonable care to prevent it.

Consequently, facts being alleged in a complaint showing the duty as we have outlined it hereinabove, the allegation that defendant (appellant) *negligently* failed to use reasonable and proper means to prevent the injury complained of *necessarily* implies that defendant had notice of the threatened injury in time to exercise reasonable care to prevent it. City of Birmingham v. Norwood, 220 Ala. 497, 126 So. 619, and cases cited in the opinion in same.

That the action of the third person causing the injury to a customer in a store, kept for the profit of its owner and operator, or operator, will not be considered an "independent intervening act"—for which no liability on said keeper or operator exists—"where the act of the third person might reasonably have been anticipated by the storekeeper," has been definitely held. See authorities above, and also cases cited in note, 100 A.L.R., Par. 3 of left column of page 718.

Measuring the allegations of the two counts of the complaint—"X" and "Y"—submitted to the jury in this case, by the law as set forth hereinabove, it is at once apparent that the demurrers to same were overruled without error.

The jury were authorized to find from the evidence in this case that appellee's wife was a customer in appellant's storehouse at or about the closing hour on a certain afternoon; that said storehouse, where goods, merchandise and groceries were at the time kept for sale, and being sold—some, presently to appellee's wife—was at the time in the charge and under the control of one Holliday as Manager, and who was, by the way, though we do not immediately see its importance, appellant's alter ego (Great Atlantic & Pacific Tea Co. v. Smalley, 26 Ala.App. 176, 156 So. 639, certiorari denied Id., 229 Ala. 289, 156 So. 641); that an altercation arose between the said Holliday and a boy named McEwen; that McEwen, *in* the store at the time, was drinking, and in a boisterous mood; that Holliday escorted him, with some force, to the door and *put* or *let* him out; that McEwen kicked the door—in an apparent effort to come back inside—so hard that the "latch came off;" that Holliday either did or did not tell one Brown (an employee of appellant there

in the store at the time, McEwen being in no way connected with appellant or its said business) that he (Brown) was "let off" for the day, and to "go outside and beat Hell out of McEwen"; that appellee's wife either did or did not say to Holliday, "I wouldn't do that; why don't you call the law?"; that Brown went outside the store and proceeded to "knock McEwen down" a time or two; that McEwen went across the street, picked up a number of rocks and threw them, one after the other, against the front of the store, toward Brown, standing there; that Holliday opened the door to let Brown in the store, or that Brown opened the door to let himself in, Holliday standing near the door, and that just as the door was opened one of the rocks thrown by McEwen came through the open door, struck Holliday a "glancing lick," and struck appellee's wife in a very tender part of her body, inflicting a very painful wound upon her.

The jury were authorized to find, further, and from their verdict apparently did find, that all the while McEwen was throwing the rocks Holliday did nothing—although there were "double screen doors" plus a "wooden door with a glass front" on the front of the store. And that if these doors had been closed by Holliday appellee's wife would not have been injured.

We believe we have fairly summarized what the jury were authorized to find from the evidence; although able and industrious counsel on both sides of the case, in their briefs filed here averaging 50 long typewritten pages to the side, have left us without the benefit of their summary.

And, applying the law to the facts, as the jury were authorized to *find* the facts, it is apparent, we believe, that appellant's written request that the jury be instructed to find in its favor was refused without error. At least we so hold.

It will be observed that we regard it as of no moment whether the jury found that Holliday, so to speak, "started the fight" with McEwen, or not; or whether Holliday "opened the door" to "let Brown in," or. merely "permitted Brown to do it." Under our view, Holliday's (appellant's alter ego's) duty began when McEwen threw the rocks toward the store—in Holliday's plain sight—obviously endangering appellee's wife *unless* the doors were closed. And the "breach of that duty" was

in Holliday's taking *no* steps to close the doors, or *keep them closed.*

All that line of cases cited and relied upon by appellant—to the effect that the master is not liable for the willful torts of the servant—seem to be beside the point.

As said in a note in 40 A.L.R. page 1215, after reviewing a number of such cases: "Some of the cases cited in the preceding subdivision, having held the doctrine of respondeat superior inapplicable, denied liability, apparently without considering the question whether or not liability might be predicated independently of that doctrine, upon the duty arising out of the particular relationship. That may have been due, in some instances, *to the failure to present such a case by the pleadings or evidence.*" (Italics ours.) That, we believe, was the situation with regard to our cases of Great Atlantic & Pacific Tea Co. v. Lantrip, 26 Ala.App. 79, 153 So. 296; and Western Union Tel. Co. v. Hill, 25 Ala.App. 540, 150 So. 709. And our holdings in the two cases mentioned in no way militate against our holding, here.

It only remains that we say that we do not regard the damages awarded ($800) as being excessive. True, appellee's "expense" in having his wife treated and nursed does not nearly approximate the amount of the verdict of the jury. But he was entitled to be compensated for the loss of the "services, society and comfort" of his wife.

Appellee, and his wife, for that matter, being in the prime of life, and the peculiar injury inflicted upon his wife being one shown to incapacitate her for more than a year from furnishing him a certain rather essential "comfort," we do not feel that the amount of the judgment rendered in his favor should be disturbed.

What we have said hereinabove will serve, we believe, to indicate that it is our opinion that no error prejudicial to appellant infects any ruling the exception to which is assigned and argued here. And the judgment is affirmed.

All that appears hereinabove was written by me, as and for the opinion of the Court. But the majority wouldn't have it; so it now becomes my reason for dissenting from the decision announced; which I hereby do.