LEE, Respondent, vs. NATIONAL LEAGUE BASEBALL CLUB OF MILWAUKEE, INC., Appellant.

*April 9—May 6, 1958.*

For the appellant there was a brief by *Bender, Trump, Davidson & Godfrey,* and oral argument by *Kneeland A. Godfrey,* all of Milwaukee.

For the respondent there was a brief and oral argument by *Jerome D. Grant* of Milwaukee.

CURRIE, J. The issues presented on this appeal are as follows:

(1) Was the defendant negligent in failing to take proper steps to protect the plaintiff from injury by the acts of other spectators at the time the foul ball was batted into the box near where the plaintiff was seated?

(2) If the first question is decided in the affirmative, did such negligence constitute a proximate cause of the plaintiff's injuries?

(3) Did the plaintiff assume the risk of being injured as a result of patrons scrambling for a foul ball and knocking her out of her chair?

It has generally been held that one who invites the public to a public amusement place operated by him is liable for injury sustained by an invitee as a result of acts of third persons, if such operator has not taken reasonable and appropriate measures to restrict the conduct of such third parties, of which he should have been aware and should have realized was dangerous. *Edwards v. Hollywood Canteen* (1946), 27 Cal. (2d) 802, 809, 167 Pac. (2d) 729, 733; *Oliver v. Oakwood Country Club* (Mo. 1951), 245 S. W. (2d) 37, 41; *Hughes v. St. Louis Nat. League Baseball Club* (1949), 359 Mo. 993, 999, 224 S. W. (2d) 989, 994, 16 A. L. R. (2d) 904; *Fimple v. Archer Ballroom Co.* (1949), 150 Neb. 681, 685, 35 N. W. (2d) 680, 683, 684; *Tyrrell v. Quigley* (1946), 186 Misc. 972, 974, 60 N. Y. Supp. (2d) 821, 822; *Boardman v. Ottinger* (1939), 161 Or. 202, 207, 88 Pac. (2d) 967, 969; and *Quinn v. Smith Co.* (5th Cir.

1932), 57 Fed. (2d) 784, 785. See also Anno. 20 A. L. R. (2d) pp. 8, 32, sec. 13.

The leading Wisconsin case on this issue of the duty, which the operator of a place of amusement is required to exercise in order to protect his patrons from the wrongful acts of third persons, is *Pfeifer v. Standard Gateway Theater* (1951), 259 Wis. 333, 48 N. W. (2d) 505. In that case a boy, while a patron in the defendant's moving-picture theater, was injured as a result of being struck in the eye by an object thrown or projected by some third person. There was testimony that for some time prior to the accident a group of older boys seated near the plaintiff had been throwing popcorn boxes and shooting paper wads by means of rubber bands. There was a dispute in the evidence as to whether the defendant at the time had any employee present patrolling the theater aisles. The trial court directed a verdict for the defendant. This court reversed, and held that a jury issue was presented as to whether the defendant had been negligent in failing to properly patrol its theater. A number of cases from other jurisdictions were cited which held that whether the number of guards furnished or other precautions taken by the owner, who has assembled a large crowd of people on his property, are sufficient to control the actions of a crowd, is ordinarily a question for the jury to determine under all the circumstances.

At the time the plaintiff was knocked from her seat in the stampede and scramble by about a dozen other spectators to secure the foul ball as a souvenir, the usher stationed in the box had been withdrawn from his customary station therein and was standing at the extreme front of the box with his back to most of the persons occupying the box. His position at the front of the box was not for the purpose of maintaining order and protecting patrons, but so that he would be in a position to go out onto the playing field as soon as the game was over to perform other duties there.

Counsel for the defendant urge that the defendant had no reason to anticipate that the withdrawal of the usher might result in a patron, such as the plaintiff, being injured by the acts of the crowd. Special stress is placed upon the testimony that no person had previously been injured in a scramble for a ball batted into the stands at any prior baseball game in the stadium during the operation of the same by the defendant. However, it is conceded that the crowd present at games had scrambled for foul balls hit into the stands. Therefore, the defendant ought to have reasonably anticipated that some patron might sometime be injured as a result of such a scramble. Restatement, 2 Torts, p. 816, sec. 302 (b), comment *c*.

We are satisfied that an issue of fact was presented, as to whether the defendant was negligent in having failed to have taken any precautions to protect the plaintiff from injury by the acts of third persons in stampeding in their scramble for the ball, and we so hold. Therefore, the trial court's finding of negligence against the defendant is conclusive on this court.

We consider that the issue of whether such negligence constituted a proximate cause of plaintiff's injuries presents a closer question. William Bradley, defendant's chief usher, testified that, even if the usher assigned to box 14 had been in his customary station some six to 10 feet from plaintiff's chair, there was nothing such usher could have done to have prevented the 10 or 12 spectators stampeding to recover the ball batted into such box near the plaintiff. The testimony disclosed that this happened in "just a flash." On the other hand, Bradley also testified that the crowd present at a game in the Milwaukee County Stadium is less orderly when an usher is not present; that ushers are directed to instruct patrons to keep their seats when a foul ball is hit into the stands; and that the ushers are also instructed to "follow a foul ball to see that nobody gets hurt." The defendant contends that, if the usher in box 14 had been present at his

customary station when the foul ball was batted into the box and landed near the plaintiff, the spectators who engaged in the stampede would have disregarded any order of the usher to keep their seats.

The trial court in finding of fact No. 9 expressly found that the absence of the usher from his assigned station was a substantial factor in producing plaintiff's injuries. This court is committed to the "substantial factor" test of determining proximate cause. *Pfeifer v. Standard Gateway Theater* (1952), 262 Wis. 229, 236, 55 N. W. (2d) 29. We do not consider that Bradley's opinion testimony, that the presence of an usher would have been ineffective to have prevented the plaintiff's injury, was conclusive on this issue of proximate cause. It is the conclusion of this court that issue of proximate cause presented an issue of fact, which has been determined adversely to the defendant by the trier of fact in the trial below.

On the issue of proximate cause the defendant strongly relies upon *Emerson v. Riverview Rink & Ballroom* (1940), 233 Wis. 595, 290 N. W. 129. There the plaintiff, a patron of a roller-skating rink, was injured by being run into and struck by two other patrons skating as a couple, and recovered a judgment below against the defendant operator based upon a jury verdict. On appeal a divided court reversed. One of the grounds of reversal was that, as a matter of law, any failure of the defendant to provide sufficient guards was not causal. At the time of the accident three guards were on duty patrolling the rink. The basis of such holding was that there was nothing in the prior conduct of the two skaters who struck the plaintiff which should have been noticed by the guards and which would have caused them to warn or control such skaters to desist therefrom. In contrast to this, in the instant case there was testimony from which the trier of fact could reasonably infer that, if the usher had been present at his customary station in the box, either

his presence there, or his command to the spectators in the vicinity of the batted ball to keep their seats, might have been effective to have prevented plaintiff's injury. We, therefore, do not consider the *Emerson Case* to be controlling of the result here.

We turn now to the last of the three issues presented on this appeal, viz., that of whether the plaintiff, as a matter of law, had assumed the risk of being injured as a result of other patrons scrambling for a foul ball.

Prosser, Law of Torts (2d ed.), pp. 307, 308, sec. 55, states that there is an implied acceptance of the risk by a spectator who is hurt as a result of a flying ball at a ball game. Among the cases holding that there is such an assumption of risk are: *Brown v. San Francisco Ball Club* (1950), 99 Cal. App. (2d) 484, 222 Pac. (2d) 19; *Shaw v. Boston American League Baseball Co.* (1950), 325 Mass. 419, 90 N. E. (2d) 840; *Brisson v. Minneapolis Baseball & Athletic Asso.* (1932), 185 Minn. 507, 240 N. W. 903; *Hunt v. Portland Baseball Club* (1956), 207 Or. 337, 296 Pac. (2d) 495; *Schentzel v. Philadelphia Nat. League Club* (1953), 173 Pa. Super. 179, 96 Atl. (2d) 181; *McNiel v. Fort Worth Baseball Club* (Tex. Civ. App. 1954), 268 S. W. (2d) 244; and *Kavafian v. Seattle Baseball Club Asso.* (1919), 105 Wash. 215, 181 Pac. 679. See also "The Liability of the Proprietor of a Baseball Park for Injuries to Spectators Struck by Batted or Thrown Balls," 1951 Washington University Law Quarterly, 434, and Anno. 142 A. L. R. 868, 871.

Some writers take the position that a spectator, who voluntarily seats himself at a baseball game in a place where he knows balls are likely to be batted or thrown, is guilty of contributory negligence rather than assumption of risk. Keeton, "Personal Injuries Resulting from Open and Obvious Conditions" (1952), 100 University of Pennsylvania Law Review, 629, 633; and Malone, "Contributory Negli-

gence and the Landowner Cases" (1945), 29 Minnesota Law Review, 61, 74–80. We do not find it necessary to pass on such distinction on this appeal, because counsel for the defendant have not grounded any of their contentions upon contributory negligence.

The rationale of the cases, which hold that a spectator at a baseball game, who accepts a seat in a portion of the stands that is unprotected by a screen, cannot recover from the park owners if struck by a batted or thrown ball, is that he has assumed the risk of dangers which are a matter of common knowledge. *Dusckiewicz v. Carter* (1947), 115 Vt. 122, 125, 52 Atl. (2d) 788, 791. As we view the issue of assumption of risk in this case, it boils down to the question of whether it is a matter of common knowledge that spectators at baseball games, who scramble for balls batted into the stands, are likely to forcibly knock other patrons out of their seats with such force as to injure them. This could not have been a matter of common knowledge on the part of patrons of the defendant in attendance at National League games up to the time of plaintiff's injury. This is because of the testimony that no one had been so injured there prior to such time.

It is true that there was always the possibility of such an occurrence taking place because of the known propensity of spectators to scramble for balls batted into the stands. However, one in the plaintiff's position may well have considered that the defendant maintained a sufficient force of ushers to prevent spectators engaging in the extreme roughhouse tactics which resulted in plaintiff's injury. The situation in this respect is very different from a spectator who buys a ticket for a seat in a section of the stands unprotected by a screen and is struck by a batted ball. Such a person knows in advance that the park owner or operator has taken no steps to guard against such a contingency happening, as well as that it is likely to occur.

It is our determination that it cannot be held as a matter of law that the plaintiff in the instant case assumed the risk of the occurrence which caused her injury, but that such issue of assumption of risk also presented a question of fact. The trial court's finding of fact on this issue cannot be held to be against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.
BROADFOOT, J., dissents.