302 So.2d 67

**F. W. WOOLWORTH, a corporation, et al.**

**v.**

**Lona Pearl KIRBY.**

**SC 513.**

Supreme Court of Alabama.

Oct. 3, 1974.

Lanier, Shaver & Herring and E. Cutter Hughes, Jr., Huntsville, for appellants.

Stephens, Millirons & Harrison, Huntsville, for appellee.

HEFLIN, Chief Justice.

Defendant, F. W. Woolworth Company, appeals from a judgment rendered against it in a personal injury action.

As a promotional scheme, the appellant-defendant's Woolco store on University Drive in Huntsville, Alabama, planned a ping-pong ball drop. The idea was to drop balls from a passing airplane into the back parking lot of the store, each ball containing a certificate entitling the finder to a prize. Prizes ranged from a color television and a stereo set to ice cream cones. The ping-pong ball drop was held on the morning of November 17, 1971, in conjunction with a sale at the store, and as the result of extensive advertising—some nine full-page ads in the Huntsville Times and 200 thirty-second radio spots advertising the sale and promotional activities—there were, in the estimation of the manager, some 4,500 people in the back parking lot (300′ x 350′) at 9:00 o'clock that morning to catch the ping-pong balls.

Mr. Dall Shady, a Huntsville pilot with 30 years' experience, contracted with appellant (defendant) to drop the balls. Shady had a television camera installed in the airplane so he could see what was directly under him, and then made practice drops. Just before the actual drops he passed over the parking lot and dropped toilet paper to check the wind. Pilot Shady told the defendant he could not control where the balls would fall, so Woolco should put some employees on the buildings to get those balls that might fall there. Woolco did station employees on the buildings to catch balls and throw them to the crowd in the parking lot.

Plaintiff, Mrs. Lona Pearl Kirby, 70 years old at the time, having heard and seen the sale advertising, went to the store that morning with other people, including her small grandson. Evidence indicates that, finding the door of the store locked, she took her grandson toward the rear parking lot to watch the airplane, which was then coming over at 1,000 feet to make the third drop. (There were 768 balls dropped—approximately $\frac{1}{3}$ on each of three passes.) Mrs. Kirby took several steps into the parking lot and, within a very short time after arrival, the ping-pong balls began falling around her. The crowd came after the balls. Someone in the crowd knocked her down and some members of the crowd ran over her. She was carried by ambulance to a hospital and treated for injuries, the most serious being a broken right hip.

There was testimony from a former employee of Woolco that he watched the drop from the top of the building and that he saw a man "on the ground after the second drop," and perhaps "knocked down." Another witness testified that on the third drop she was knocked down and stepped on, suffering a slightly injured ankle. Evidence indicated that during all three drops the crowd would run, or hurry around chasing the falling balls, watching them shift direction with the wind.

Mrs. Kirby sued the defendant, alleging negligent acts causing her injuries. The jury gave a verdict for $52,500.00. The trial court ordered a remittitur of $17,500.-00, reducing the judgment to $35,000.00.

This case arose and was tried before the implementation of the new Alabama Rules of Civil Procedure.

The plaintiff's amended complaint alleged, among other things, three negligent acts, in the alternative, and that "as a proximate consequence of the negligent act or acts, the mob of people in the said back parking lot in their effort to catch the balls ran into the Plaintiff knocking her down and trampling her" and causing injuries. The alternative averments of negligent acts were that "at said time and place Defendant, F. W. Woolworth Company, [1] negligently failed to police or control the crowd that said Defendant had amassed at said time and place or [2] the said Defendant negligently dropped balls in

close proximity to and around the Plaintiff or [3] negligently had an independent contractor to drop balls which balls fell in close proximity to and around the Plaintiff."

The defendant contends that the trial court erred in refusing its written request for the affirmative charge and in overruling its demurrers to the complaint as last amended. These contentions relate to all three alternative allegations and involve the question of the duty owed on the part of the defendant to the plaintiff. This raises a case of first impression in this state concerning the liability of a proprietor for injury to a customer or patron caused by other patrons through pushing, shoving or crowding during a promotional activity.

In 62 Am.Jur.2d Premises Liability § 201 the following appears:

" * * * [I]n accord with the concept of foreseeability, a duty to prevent the crowding of a business establishment may arise in those situations where the proprietor can foresee that a customer may suffer injuries through the pressure of the crowd, and a storekeeper will be held liable if he has failed to exercise ordinary care to protect a customer from the actions of a crowd which he should have foreseen or anticipated, and the customer is injured by the pushing, crowding, or jostling of other persons. Specifically, a storekeeper will be liable for injuries to a customer where he carries on a promotional activity which foreseeably will cause crowds to gather and push, notwithstanding a disorder in the crowd contributed to the injuries.

"In regard to children and elderly persons who may be injured by being pushed by others while visiting a business establishment, the proprietor's duty of care requires the taking of precautions commensurate with the increased likelihood of injury to persons in those classes."

The closest case to the present factual situation that this court has been able to locate is Hicks v. M.H.A. Inc., 107 Ga. App. 290, 129 S.E.2d 817 (1963). This case involved an action against owners of a shopping center for injuries sustained by a patron who was knocked down by a crowd trying to get paper plates (redeemable for merchandise) which were being dropped onto a parking lot from an airplane. The Georgia Court of Appeals held that foreseeability of the conduct of a crowd competing for "merchandise prizes" dropped from an airplane was for jury solution and that actual notice by the defendants of the danger to the particular plaintiff need not be alleged.

In Lee v. National League Baseball Club of Milwaukee Inc., 4 Wis.2d 168, 89 N.W. 2d 811 (1958), a jury verdict was upheld where the plaintiff was injured when pushed off her chair and trampled upon by other spectators who were attempting to recover a foul ball which had landed in front of her chair. The Supreme Court of Wisconsin, in an action against the baseball club, stated:

"It has generally been held that one who invites the public to a public amusement place operated by him is liable for injury sustained by an invitee as a result of acts of third persons, if such operator has not taken reasonable and appropriate measures to restrict the conduct of such third parties, of which he should have been aware and should have realized was dangerous. Edwards v. Hollywood Canteen, 1946, 27 Cal.2d 802, 167 P.2d 729, 733; Oliver v. Oakwood Country Club, Mo.1951, 245 S.W.2d 37, 41; Hughes v. St. Louis National League Baseball Club, 1949, 359 Mo. 993, 224 S.W.2d 989, 994, 16 A.L.R.2d 904; Fimple v. Archer Ballroom Co., 1949, 150 Neb. 681, 35 N.W.2d 680, 683–684; Tyrrell v. Quigley, 1946, 186 Misc. 972, 60 N.Y.S.2d 821, 822; Boardman v. Ottinger, 1939, 161 Or. 202, 88 P.2d 967, 969, and Quinn v. Smith Co., 5 Cir., 1932, 57 F.2d 784, 785. . . ."

In Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683 (1951), a complaint was held sufficient which alleged that the defendant took no steps to police a crowd that had gathered at a store in response to advertising that ladies' hose would be given to the first 300 patrons on a particular morning where the plaintiff was injured when pushed by the crowd against the door and a glass showcase. Compare Crammer v. Willston Operating Co., 19 N.J.Super. 489, 88 A.2d 630 (1952).

See cases collected in an annotation entitled "Liability of proprietor for injury to customer or patron caused by pushing, crowding, etc., of other patrons," 20 A.L. R.2d 8.

Restatement, Second, Torts § 302 is as follows:

"§ 302. Risk of Direct or Indirect Harm

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

(b) *the foreseeable action of* the other, *a third person*, an animal, or a force of nature." (Emphasis supplied)

Section 302 A of Restatement, Second, Torts recites:

"§ 302 A. Risk of Negligence or Recklessness of Others

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person."

In the case at hand the question arises as to whether or not the defendant should have foreseen or realized the probability of injury to the plaintiff or to a person similarly situated. Certainly it would be within the jury's province to determine that the defendant should have foreseen or realized that the crowd would run in unpredictable paths as the ping-pong balls were blown about with each gust of wind; that the crowd would push and shove in order to catch a ball and win a prize; and that dangerous conditions could develop for individuals in the crowd, including the elderly and children. Further the jury in this case had the right to determine that reasonable care under the circumstances required the defendant to take steps pertaining to the plaintiff and other persons similarly situated, including, but not limited to, giving warnings of the dangers involved, taking steps to control or police the crowd with supervisory personnel, and using loud speakers to warn the crowd not to run over people and to warn the elderly or children to stay out of the crowd.

The defendant cites Great Atlantic & Pacific Tea Co. v. Keltner, 29 Ala.App. 5, 191 So. 633, cert. denied, 238 Ala. 462, 191 So. 640 (1939), for the proposition that a defendant is not liable for the acts of a third party. In denying the writ in *Keltner* this court took pains not to approve or disapprove the language in the majority opinion of that Alabama Court of Appeals case. *Keltner* involved a third party who unlawfully threw rocks into a defendant's store, injuring a patron; here the third parties who knocked down and ran over the plaintiff were part of a crowd lawfully assembled at the defendant's bidding and were doing the very thing the defendant could have realized they would do, jostling with the crowd trying to catch ping-pong balls.

This court holds that when a proprietor or storekeeper causes a crowd of people to assemble pursuant to a promotional activity, then that person owes a duty to exercise reasonable care commen-

surate with foreseeable danger or injury to protect those assembled from injuries resulting from the pressure, pushing, shoving, jostling or other activities of the crowd or individuals within the crowd; that the foreseeability of danger or injury under such circumstances is for jury determination; and that reasonable care commensurate with the foreseeability of danger or injury may require greater precautions when children or the elderly are present.

This court views the plaintiff's second alternative allegation of negligence as a broad, general and comprehensive averment and finds the evidence is supportive of jury submission under this allegation. It should be noted that the proof that employees of the defendant gathered wind-blown balls from the rooftop and dropped them into the crowd around the plaintiff would have justified a jury submission on this averment when viewed under all of the other proven circumstances even if the allegation be restrictively construed.

■ The defendant contends in regard to the third alternative allegation that the trial court should have granted its written request for the affirmative charge because the evidence failed to show that the pilot was negligent in any manner. The plaintiff concedes that there was no evidence of negligence on the part of the pilot. The plaintiff contends that the amended complaint should be read as alleging negligence on the part of the defendant in having the pilot drop the balls around the plaintiff— and that whether the pilot acted negligently or carefully is of no consequence. This court holds that it was unnecessary to prove acts of negligence on the part of the pilot under the allegations.

■ This court holds that the evidence in this case was sufficient for jury determination and that no error was committed by the trial judge in refusing to give the

affirmative charge or in overruling the demurrers to the amended complaint.

■ The defendant further contends the trial court erred in refusing to give the defendant's written requested charge D–LLLL, set out below:

"The Court charges the Jury that if you are reasonably satisfied from the evidence that the injury of the Plaintiff resulted from the acts of third parties as an independent, intervening, efficient cause, not reasonably to be anticipated by the Defendant, then any negligence shown on the part of the Defendant would not meet the further legal requirement that such negligence was the proximate cause of the injury and your verdict should be for the Defendant in this case."

The refused instruction at issue here is of the effect that a sufficient intervening cause would have relieved the defendant of liability even if it had been negligent. The basis of this assignment is the defendant's contention that the actual proximate cause of Mrs. Kirby's injuries was not any negligence on the defendant's part, but action on the part of the strangers who ran into her and trampled her during the ping-pong ball chase.

Defendant has not cited any cases from this court considering this particular refused charge nor has this court become aware of any. However, this court does not consider it necessary to discuss whether this requested charge correctly states the law, because it appears that the trial judge's oral charge taken with the granted written charges requested by the defendant fairly and substantially state the charge requested and refused, and therefore there was no reversible error. Title 7, Section 273, Alabama Code of 1940, as amended (Recompiled 1958).

Further, this court would call attention to Section 33.02 of Alabama Pattern Jury

Instructions—Civil, published upon the recommendation of this court:

"APJI 33.02

INTERVENING AND SUPER-SEDING CAUSES

The committee recommends that no 'intervening or superseding causes' instruction be given.

NOTES ON USE

The charge on 'proximate cause' has limits included in its own definition and customary definitions of 'intervening and superseding causes' are not likely to be enlightening to a jury. Such definitions are usually negative in nature and suggest something that proximate cause is not and are confusing and misleading."

This court's order on April 19, 1973, recommending the publication of the Alabama Pattern Jury Instructions, states:

" * * * Similarly, in all circumstances in which the notes accompanying the Alabama Pattern Jury Instructions contain a recommendation that a certain type of instruction not be given, the trial judge may follow such recommendation unless he shall determine that the giving of such an instruction is necessary to accurately and sufficiently instruct the jury, in which event he may give such instruction as he shall deem appropriate and necessary."

It it noted that the trial judge's oral charge defined "proximate cause" in essentially the same terms as those used in Alabama Pattern Jury Instructions—Civil, Section 33.00, quoted below:

"The proximate cause of an injury is that cause which in the natural and probable sequence of events, and *without the intervention of any new or independent cause,* produces the injury and without which such injury would not have occurred." (Emphasis supplied)
Because the refused instruction was fair-

ly and substantially covered by other instructions and because of the persuasiveness of the recommendation of the Alabama Pattern Jury Instructions Committee, this court finds no error in the trial judge's refusal to give this requested charge.

■ The defendant claims that the trial judge committed error in not allowing the defendant's manager, Mr. Boyack, who was in charge of the ping-pong ball drop, to testify to a collective fact question when he was asked the following question:

"At any time when you saw the crowd, were they boisterous or violent in any way to indicate a probability or likelihood of the crowd doing violence to anybody?"

This question was asked in response to the testimony presented by the plaintiff that the crowd was boisterous during the first two ping-pong ball drops and that danger was imminent on the third drop.

The defendant contends that the question was taken almost directly from Louisville & Nashville Railroad Co. v. Courson, 234 Ala. 273, 174 So. 474 (1937). There the question was as follows:

"At any time that you saw him on the occasion of that trip, was he boisterous or rowdy or violent in any way to indicate any probability or likelihood of his doing violence to anybody on that train or any property of the railroad?"

In *Courson* the question was held proper. It was within the rule of collective facts. The train passenger plaintiff's claim in *Courson,* as in the instant case, was based on failure of the defendant to afford protection to plaintiff.

This court has followed the collective facts rule. See Williams, Alabama Evidence § 170 and Conrad, Modern Trial Evidence § 634. In McCormick, Evidence § 11, the following appears:

"A long-established 'exception' to the opinion-rule in some states is the prac-

tice of admitting 'opinions' where they can be justified as 'shorthand renditions' of a total situation, or as 'statements of collective facts': " 'Dulaney v. Burns, 218 Ala. 493, 513, 119 So. 21, 24, syl. 8, 1928, ("Did you ever say anything to influence him about not leaving anything to his kinfolks?"); Pollard v. Rogers, 234 Ala. 92, 173 So. 881, syl. 17–19, 1937, ("He looked like he was dying"; opinion has extensive discussion); City of Beaumont v. Kane, 33 S.W.2d 234, 241, 242, syl. 12, Tex.Civ.App., 1930, ("The situation at the end of Pearl Street presented such an appearance that a stranger on a rainy night would be liable to drive off into the river."); Horn v. State, 12 Wy. [Wyo.] 80, 148, 73 P. 705, 721–723, 1903 (a witness who overheard, but did not see, defendant and another person in conversation was allowed to state whether defendant's admission of killing was "sincere" or "joshing"; an extremely picturesque case).' "

A review of the evidence supports the defendant's position that this issue was very material under the first alternative allegation of the amended complaint that the defendant negligently failed to police or control the crowd it had amassed and since plaintiff strongly urged that the activity and conduct of the crowd during the first two drops was sufficient to put the defendant on notice of the likelihood of injury to individuals in the crowd. Therefore, this court holds that there was error in the trial court's sustaining of the objection to this question, as well as in the overruling of the defendant's amended motion for a new trial, which again raised this matter.

For this error the judgment must be reversed and the cause remanded. Therefore, it is not necessary for this court to address itself to the remaining issues raised by the defendant's assignments of error.

Reversed and remanded.

MERRILL, HARWOOD, BLOODWORTH, MADDOX, McCALL, FAULKNER and JONES, JJ., concur.

COLEMAN, J., recuses himself.

JONES, Justice (concurring specially).

Because I initially disagreed with that aspect of the opinion dealing with the "admissibility of the collective facts" issue, I have chosen to write briefly on this point. It was my original impression, although agreeing fully with the collective facts rule, that the factual context within which the question was posed in this case was altogether different from that of *Courson* insofar as the conduct of the respective defendants in precipitating the foreseeable risk of harm to the plaintiff. In *Courson,* there was nothing in the conduct of the defendant railroad in conducting the excursion that gave rise to a foreseeable danger apart from an unruly crowd that might develop which was the very point of the question there in issue. Here, the foreseeable risk of harm lay in the whole of defendant's promotional scheme.

While this factual distinction is real, I am now convinced, upon further reflection, that it is not so material as to make *Courson* here inapplicable in light of plaintiff's first alternative averment of negligence, i. e., "negligently failed to police or control the crowd." Given the proposition that plaintiff may pursue her remedy or alternative theories (either in the same or separate counts), and the opinion of this Court so holds, the defendant likewise must be permitted its defense as to each of such theories. The offered question, which sought the witness's observation of the crowd between the second and third drop, was relevant to the issues as framed by the pleading and sought to refute plaintiff's evidence already adduced as to the condition of the crowd. In my opinion, the trial Court would have correctly ruled against admissibility had plaintiff based her claim

**256**

solely on the alternative averments of negligence listed in the opinion as (2) and (3), and this for the reason that the precedent of *Courson* is inapplicable to those theories of recovery. I concur fully with the opinion.