## 24430. GREAT ATLANTIC & PACIFIC TEA CO. *v.* COX.

DECIDED SEPTEMBER 26, 1935. REHEARING DENIED OCTOBER 4, 1935.

*Bryan, Middlebrooks & Carter, John A. Dunaway,* for plaintiff in error.

*John I. Kelley,* contra.

GUERRY, J. W. T. Cox brought an action for $3000 damages against the Great Atlantic and Pacific Tea Company. The jury returned a verdict for $450, and the question for determination is whether or not the court erred in overruling the defendant's. motion for a new trial.

It is averred in paragraph 4 of the petition that on June 19, 1933, plaintiff, "who had for some time been a customer at said retail store, . . went into said place of business for the purpose of buying groceries . . ; that, upon entering the store, the manager of the same, W. G. Anderson, began waiting upon . . petitioner, and while . . petitioner was thus engaged in the purchase of his groceries, one Sam Alvin [Oliver?], a clerk or helper of the defendant, began scuffling with one Ed Fowler . . in the presence of and with the full knowledge of said . . Anderson; that petitioner, not anticipating any injury . . as a result of said scuffling, and relying upon the manager of said

store to see that no injury or danger might occur to him or other customers by reason of the same, paid no particular attention to said Alvin [Oliver?] and Fowler, and during most of the time was standing with his back to them; that . . said manager was facing them and had ample opportunity to observe the danger that your petitioner was in, and in the exercise of ordinary care and diligence should have observed the same, and yet, with such knowledge, failed to stop said scuffle or to warn . . petitioner of impending danger, so that when . . . petitioner turned around the said Alvin [Oliver?] tripped or threw the said Fowler against your petitioner with great force and violence, and in some way struck . . petitioner a terrific blow in the testicles; that as a result of said blow your petitioner was knocked down upon the floor, where he lay writhing with painful agony . . ; that as a result of said blow your petitioner's testicles and epididymis have been greatly enlarged and swollen, and his spermatic cord has been seriously affected; and your petitioner has further been wholly incapacitated to perform any labor of any kind since said injury, and on account thereof." In paragraph 7 it is averred that "the direct, proximate, and efficient cause of the injury and damage complained of herein" was that the defendant was negligent: (a) In that its manager "knowingly permitted a clerk or helper in the employ of defendant to wrestle and scuffle with another, as was done in said case, and to throw said person over, on, and against your petitioner under the circumstances alleged in this petition." (b) In that said manager "knowingly failed and neglected to stop said scuffling and wrestling in said store and to prevent the injury and damage complained of." (c) In that "it failed to preserve order in said store and to keep the same safe for its customers and your petitioner." (d) "In that the manager of said store, seeing the danger in which your petitioner was placed, failed to warn your petitioner of his danger in order that he might have avoided said injury and damage by getting out of the way of said scuffling and wrestling bout." (e) In that said manager, "with full knowledge of the fact that your petitioner was liable to be injured by reason of said wrestling and scuffling in said store, and with full knowledge of the fact that your petitioner was not cognizant of danger from what was going on until he turned around and received the blow and injury referred to, failed and neglected to stop said scuf-

882

fle, or to warn . . petitioner of his danger." (f) "The defendant was negligent by reason of the conduct of said clerk or helper in the premises." It is averred in paragraph 8 that "petitioner was acting in the exercise of all proper care and diligence for his own safety at the time, and, in the exercise of all proper care and diligence, could not have avoided the injury and damage complained of; and petitioner was wholly free from fault in the premises."

It appears from the evidence that the plaintiff, went to the store to buy a bottle of milk and a cake for his lunch. He told the manager, Anderson, what he wanted, and Anderson told him to get the cake from the counter, and he (Anderson) would get the milk. Anderson then went into the back room to get the milk. While plaintiff was getting the cake, another employee of the store, Sam Oliver, was standing near by, arranging goods on the shelves, and another person, E. H. Fowler, came into the store, walked up behind Sam Oliver, and placed his hands over Oliver's eyes. Oliver bent over and swung Fowler around, and caused his foot to strike the plaintiff, causing the injury sued for. The plaintiff testified: "There wasn't anything on this occasion that made me think there was going to be a scuffle. . . I seen the boys standing there. . . They were both standing there locked up. [This was while plaintiff was getting the cake from the counter.] I had never up to that time I got the cake seen anything in that store to indicate that there was going to be a scuffle in there. I was standing in two feet of the boys. I was hit before I knew. He just throwed him up against me. It was done so quick that I did not have time to think nothing about it then. . . Up to that time I had not seen any scuffle at all." The evidence shows without question that the plaintiff had greater or at least equal opportunity with the manager of the store to discover the likelihood or probability of there being any injury inflicted, or the happening of unseemly or boisterous conduct. The manager testified: "There was no scuffle going on when I went back there to get the milk. I did not see anything at all to put me on notice that there was going to be a scuffle. . . I was getting a bottle of milk when it happened, and he [plaintiff] was following right behind me." He further testified that he did not see Fowler place his hands over Oliver's eyes. The testimony of Fowler and Oliver was to the same effect.

Without further elaboration of the testimony, we think this evidence is insufficient to support a verdict for the plaintiff.

The plaintiff being an invitee, the defendant owed him the duty to protect him from injury caused by the misconduct of his own employees in the conduct and scope of his business and from the misconduct of other customers or third persons. In *Moone* v. *Smith, 6 Ga. App.* 649 (65 S. E. 712), it was said: "If, therefore, there is any reasonable apprehension of danger to such customer from the unlawful conduct of other customers or third persons, or if· personal injury from the misconduct of other customers or third persons can be prevented by the proprietor by the exercise of ordinary care and diligence, he may be guilty of negligence for his failure to use it, and consequently responsible in damages." In the *Moone* case the alleged misconduct of other customers causing the injury had continued for ten or fifteen minutes, they being drunk or drinking, and their condition being evidenced by their actions. In such a case, where the proprietor had ample notice of the probable effect of their conduct and made no move to stop or prevent such conduct, his failure might be held to be· negligence as to such customer so injured as a result of the misconduct of other customers. In the present case the negligence alleged is that the defendant "knowingly failed and neglected to stop the wrestling and scuffling which caused the injury, and failed to warn the plaintiff of his danger." From the testimony of the plaintiff it is evident that before the time of the injury there was nothing happening which would cause an ordinarily prudent person to interfere to prevent it. A customer or invitee walked behind an employee and placed his hands over the employee's eyes; the employee immediately swung or turned to get away, and caused the person who had his hands over his eyes to kick or strike the plaintiff. Such a result was entirely unexpected on the part of the plaintiff. The evidence fails to show that there were any different circumstances to put the manager of the store on notice,·or that after the scuffling started he could by the exercise of ordinary care have prevented it before the injury occurred. The clerk who was blinded by the unexpected and sudden holding of his eyes can not be said to have been lacking in ordinary care because he attempted to get away. Until the danger to the plaintiff became apparent or the circumstances were such as the exercise of ordinary care called for some

action on the part of the defendant, there can be no recovery. Ordinarily such a question is one for the jury, but in this case the evidence for the plaintiff negatives this idea.

In *Savannah Theatres Co.* v. *Brown, 36 Ga. App.* 352 (136 S. E. 478), where the exception was to the overruling of a demurrer, it was alleged that the injury was caused by the shoving of certain other customers, and that by their *previous* conduct the defendant had been put on notice as to the probable consequences of their misconduct. The plaintiff, a customer, was sitting in the theatre of the defendant. A group of small boys sitting near her were making a disturbance, "which was not checked by the defendant, although the misconduct was known to it." It was alleged that these same boys at the conclusion of the show, by shoving and pushing, in the attendant excitement caused the plaintiff to trip and fall in the dimly lighted passageway over a hole in the rubber matting. The negligence alleged in that case was that the defendant allowed the hole in the matting and the improper lighting of the passageway, and failed to check the boys in their act of shoving and pushing in the crowd *after the defendant* had been charged with notice of their boisterousness and hilarious conduct, and failed "to remonstrate with them and caution them in regard to such misconduct." In the present case the petition alleges notice to the defendant and a like failure on its part to check the misconduct after knowledge thereof; but the evidence for the plaintiff fails entirely to show any circumstances which gave notice to the defendant of any improper conduct on the part of a customer, in time for defendant to have prevented the happening. It was not shown that the conduct of the clerk and other person causing the injury had continued for a sufficient length of time (as was shown in the cases cited above) to create the need for action on the part of the defendant, or that the result could or should have been foreseen and prevented.

The negligence, if any, on the part of the clerk was not such as would make the defendant liable in damages. Such conduct was not in prosecution of the master's business. See *Savannah Electric Co.* v. *Hodges, 6 Ga. App.* 470 (65 S. E. 322). The evidence did not support a verdict for the plaintiff, and it was error to overrule the motion for a new trial.

*Judgment reversed. Broyles, C. J., concurs. MacIntyre, J., dissents.*

MacIntyre, J., dissenting. It appears from the evidence that Sam Oliver was a clerk in defendant's store; that E. H. Fowler was Oliver's friend; that W. G. Anderson was the manager of the store; that Fowler entered the store and walked up behind Oliver while he was "putting up some groceries," and put his hands over Oliver's eyes; and that Oliver, without knowing who had hold of him, threw his hands behind him and caught hold of Fowler and suddenly swung him around, causing Fowler's right foot to strike plaintiff a hard blow in the testicles; and that as a result of that blow the plaintiff suffered severe pain, was confined to his bed for about three weeks, and was treated by two doctors.

W. T. Cox swore, in part: "They [Fowler and Oliver] were to my right. I was facing the rear of the building. The man who was waiting on me [W. G. Anderson] went right on by the boys . . on back in the little room. He passed right by them. . . When I selected my cake, I was just looking at it, and turned around. They just throwed him right against me . . and knocked me down. . . I do not know what part of him hit me . . because it was done just that quick. . . I did not think the manager would allow any rough stuff . . in the place. I did not pay any attention to it. The manager walked by them. He walked between the end of the counter and where the two boys were standing. . . I just turned around and was looking at my cake, and the first thing I knew the lick come. . . The manager walked right by them." On cross-examination, Cox testified in part: "Me and him [the manager] went from the front together. . . He told me to select my cake, and I selected my cake, and he went on back in there. I saw these boys before I started to select the cake. They were . . just standing there. . . There wasn't any scuffling going on when I went in the store, . . nothing only the boy was standing there with his arms around his neck. . . There wasn't anything to indicate that there was going to be a scuffle. They were standing there locked up . . about straight, I guess. . . I was several feet from them, something like four or five feet until I got my cake, and just stepped out, and of course I came a little closer to them. . . I just turned around, and then the lick hit me. . . When I saw him, that was just about the time I got hit. . . Up to that time I had not seen any scuffle at all. . . I did not see anything to

excite me, . . only they were just locked up there. . . Well, the manager went right on . . and passed them—yes, right on by where they were standing. It is true that the defendant's manager was facing them. . . He faced them right straight through, and went on in the back end . . to get the milk. . . I say the manager was negligent. . . Of course they were just standing there, only had hold of each other. He could have stopped them and done something about it, and he might have saved me from getting hurt. I don't know whether he knowed any more about it than I did. . . It is not true that the cake-counter was up near the front and not near the back of the store."

W. G. Anderson, sworn for the defendant, testified, in part: "I walked right on by him back there. . . I did not look at them any more than I would be looking at you or any one else standing there. One had his hand over the other's eyes. If he did, I did not notice it. I know the way they were standing. I saw that, yes. I did not say anything to them. I was getting the milk. . . I was on my way to get it. I passed by them, and then I had my back to them. . . I couldn't say before I got to them he had his hands over his eyes . . I do not remember. They were standing straight up. He had him like this [demonstrating]. I was not paying any attention to them."

I have quoted largely from the evidence most favorable to the defendant in error, and have omitted much of the other testimony, for the reason that it is the prerogative of the jury to pass upon the credibility of the witnesses, the weight of the evidence, and questions of negligence; and the verdict must stand, in so far as the general grounds are concerned, if there is any evidence to support the verdict. What duty did the defendant owe Cox? Cox had entered the defendant's store as an invitee, and was there lawfully engaged in purchasing groceries, and the defendant owed him the duty of exercising ordinary care to protect him from injury that might be caused by the misconduct of its employees, customers, or third persons. See *Moone* v. *Smith,* 6 *Ga. App.* 649 (cited by the writer of the majority opinion), where the court said: "It is also insisted that the allegations of the plaintiff show that the plaintiff himself might have avoided any injury by the exercise of ordinary care and diligence; that, hearing and seeing that the men were drunk and fighting, it was his duty, if he reasonably appre-

hended danger therefrom, to leave the saloon. We are not prepared to hold that a person who is lawfully in a place of amusement or public entertainment is required to leave because of the unlawful, vicious, or dangerous conduct of other persons therein. He might be authorized to remain, relying upon the proprietor and his servants to quell the disturbance and to protect him from any hurtful consequences."

Injury to Cox was proved. The immediate cause of his injuries was the blow from Fowler's foot, and this resulted from the conduct of Fowler and Oliver. In this immediate connection we will quote briefly from the testimony of E. H. Fowler, as follows: "I was not working there at the time Mr. Cox was in the store. I came in there that day to see Mr. Oliver. . . Well, I had just got back in town and come to see Mr. Oliver, a friend of mine, and he was back in the rear of the store, and I walked back and put my hands over his eyes, and he kind of swung me around some way and hit Mr. Cox." Sam Oliver swore, in part: "Ed come in, and I had my back to him, and he put his hands over my eyes; and when he did, I just put both hands around like this, and caught his head behind mine. I did not know who it was. The length of time all this happened was just a matter of seconds."

I realize that the case is close upon the evidence. However, I do not feel warranted in holding as a matter of law that what the defendant's manager saw, or in the exercise of requisite care should have seen, was not a sufficient circumstance to cause him "reasonably to anticipate" the subsequent occurrence which resulted in the plaintiff's injury. I am therefore of the opinion that the judge did not err in overruling the general grounds of the motion for a new trial. See *Savannah Theatres Co.* v. *Brown,* 36 *Ga. App.* 352 (supra).