A00A0511. JACKSON et al. v. CITY OF HAHIRA.
A00A0512. BRYANT v. CITY OF HAHIRA.
(535 SE2d 327)

ELLINGTON, Judge.

Janice A. Bryant, Ricky and Debbie Jackson, and Amanda Jackson appeal the trial court's order granting the City of Hahira summary judgment in their personal injury actions arising out of the collision of Bryant's automobile and a train in Hahira. Ricky Jackson brought suit as the next friend of minor Amanda Jackson, who was a passenger in Bryant's car at the time of the wreck. Ricky and Debbie Jackson also sued individually for their damages flowing from Amanda Jackson's injuries. The appellants contend the trial court erred in applying an incorrect standard on summary judgment. Finding no error, we affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do

this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case.

(Citation and emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to the appellants, the evidence shows the following. On April 20, 1996, Bryant, who lived in Moultrie, visited Hahira for the second time to go to a certain beauty shop. Bryant entered the city on Georgia Highway 122, which is known as Main Street in Hahira. After leaving the beauty shop, Bryant missed the left turn that would have put her back on Main Street (Highway 122). She turned left at the next street, W. Lawson Street, in order to circle around and leave town on Highway 122. Bryant did not stop before the intersection of W. Lawson Street and Webb Street. As Bryant crossed Webb Street, she saw a stop sign located beyond the intersection of W. Lawson Street and Webb Street. She did not see the stop sign until just before she stopped.

Bryant did not understand why traffic on W. Lawson Street, which she considered a through street, would be stopped for Webb Street. She believed the stop sign was intended for the traffic on Webb Street crossing W. Lawson Street but was in the wrong place, possibly turned sideways by pranksters. Although she was not certain the stop sign was intended for her, after she crossed Webb Street, Bryant stopped between one and two car lengths from the stop sign. After she looked right and left, checking for cars, Bryant pulled away from the stop sign. When she looked back to her right, Bryant saw an oncoming train about 12-15 feet from her car and was unable to clear the tracks in time to avoid the collision.

The appellants do not dispute that the railroad crossing on W. Lawson Street was marked by a stop sign and a railroad crossbuck sign. The appellants also do not dispute that a pavement marking (crossed bars flanked by "R"s) was located about halfway between where Bryant turned onto W. Lawson Street and the railroad tracks. The appellants alleged the city was negligent in maintaining the railroad crossing, specifically claiming that the crossbuck facing traffic approaching on W. Lawson Street and the pavement markings on W.

Lawson Street were old and faded, that the crossbuck was partially obscured by the stop sign, and that the view from the stop sign was obscured by overgrown trees and bushes. Bryant did not see the pavement marking, the crossbuck, or the railroad tracks across the pavement and did not realize she was driving across railroad tracks until she saw the train bearing down on her.

To explain her failure to see the pavement marking, Bryant stated there was no reason she would not have seen a pavement marking, but "I just don't go around when I'm driving looking at the pavement." To explain her failure to see the the crossbuck, railroad tracks, and certain other signs, Bryant testified her Z28 Camaro sits low to the ground. She also testified that she does not go around "trying to see every sign."

Although the appellants alleged 'that overgrown plants obscured the view, the undisputed evidence shows that once Bryant was stopped at the stop sign and looked to her right (in the direction from which the train came), the trees and shrubs did not block her view. Bryant's own testimony that the trees and shrubs did not block her view was consistent with the affidavit testimony of a Georgia Department of Transportation accident investigator who examined the intersection two days after the train wreck took place and found that the sight distance from a stopped position at the stop sign was 750 feet to the north, the direction from which the southbound train came.

In this case, the acts the appellants allege the city had a duty to do — to maintain fresh paint on the pavement marking and the crossbuck and to ensure that the crossbuck was visible to drivers[1] — were all acts aimed at causing drivers to stop and look to determine if it was safe to cross the railroad tracks. See *Richardson v. Coker*, 78 Ga. App. 209, 213 (1) (50 SE2d 781) (1948). But the evidence is undisputed that Bryant stopped and looked before crossing the tracks and her view from the stop sign was unobstructed; therefore, the city pierced the appellants' pleadings on the essential element of causation. *Black v. Ga. Southern &c. R. Co.*, 202 Ga. App. 805, 807-808 (1) (415 SE2d 705) (1992); *Hollingsworth v. Harris*, 112 Ga. App. 290, 293 (145 SE2d 52) (1965). In response, the appellants failed to identify any evidence to create a jury issue as to whether any deficiencies in the city's marking of the crossing proximately caused the wreck. See *Lau's Corp.*, 261 Ga. at 495 (4). Accordingly, the trial court did not err in granting the city's summary judgment motion. *Watson v.*

---

[1] We do not reach the issue of whether the city, as a matter of law, had the duty to maintain the crossbuck. See OCGA § 32-6-50 (c) (1) ("each railroad company shall erect and maintain a railroad crossbuck sign on its right of way at all [railroad crossings at grade on municipal street systems]").

*Marshall*, 212 Ga. App. 206, 208 (2) (441 SE2d 427) (1994).
*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JUNE 2, 2000.

*Allen & Forehand, Rodney L. Allen,* for appellants.
*Young, Thagard, Hoffman, Scott & Smith, James B. Thagard, Susan H. Sumner,* for appellee.