A00A1945, A00A1946. NELSON et al. v. SILVER DOLLAR CITY, INC. et al.; and vice versa.
(547 SE2d 630)

POPE, Presiding Judge.

In 1995, while on a 30-minute paid break from her job as a lifeguard at White Water Park, Jenee Johnston, a 16-year-old licensed driver, struck another car on U. S. 41 (Cobb Parkway). Tragically, three people were killed in the collision. Plaintiffs Tonya Nelson and Jessie Harvey are surviving relatives and the administrators of the estates of two of the victims. They filed wrongful death claims against Silver Dollar City, Inc., which operates under the White Water name (hereinafter "White Water"), and Atlanta Structures, L.P. and TRC Realty, Inc.-III, the owners of the adjacent White Water Business Park (hereinafter collectively "Business Park").

The defendants subsequently moved for summary judgment. The trial court granted partial summary judgment, but held that an issue of fact remained on the vicarious liability claim as to whether

---

Johnston was acting in the scope of her employment at the time of the collision. The trial court granted the Business Park's motion for summary judgment. Nelson and Harvey appeal the trial court's order, and White Water cross-appeals from the partial denial of its summary judgment motion.

Viewed in the light most favorable to Nelson and Harvey, the evidence showed that on August 24, 1995, Johnston, accompanied by Joshua Levine, another White Water lifeguard, left the White Water property during a paid break to get lunch. Leaving the park was in violation of company policy, but it is unclear whether this policy was ever communicated to Johnston or Levine. The pair left the park with the knowledge and tacit consent of a supervisor, who had asked Johnston to bring food back for her as well.

Johnston drove through the adjacent Business Park and came to a stop at a point where one of the Business Park's roadways intersected with Cobb Parkway. Johnston was aware that she could have driven through the Business Park onto an adjacent street that intersected Cobb Parkway at a traffic light and which would have enabled her to turn without crossing lanes of oncoming traffic. But Johnston testified that she chose to turn onto Cobb Parkway from the Business Park's private roadway, and without the benefit of the traffic light, because she always used that route. She had never had or observed any prior problems or accidents at that intersection.

The collision occurred when Johnston attempted to turn left onto Cobb Parkway across four traffic lanes. Johnston's car struck a car driven by Lee Nelson, in which Michael Harvey was riding as a passenger. Upon impact, Nelson's car crossed the centerline into oncoming traffic, where it struck a third vehicle. Nelson, Harvey, and the driver of the third car were all killed.

Johnston told police at the scene that she was leaving White Water to run an errand for her supervisor. She said that she had looked both ways before starting her turn. In a later taped statement, Johnston again stated that she had left White Water to go out for something for her supervisor. She explained that although she had looked left before beginning her turn, she had not seen Nelson's car. Johnston was charged with failing to yield the right of way.

In her deposition Johnston stated that she was going out to get lunch and that she was going to get a milkshake for her supervisor as a "personal favor" and not as a part of her job duties. The trial court found that this evidence was contradictory and created a jury issue as to "the credibility of Johnston as a witness as to whether she was leaving White Water on a purely personal mission or at the direction of her supervisor" and thus whether Johnston had left work to run an errand for her supervisor.

*Case No. A00A1945*

1. Nelson and Harvey first assert that the trial court erred in finding that the only jury question as to White Water's vicarious liability was whether Johnston was leaving White Water on a work-related errand for her supervisor or under her supervisor's direction. But we do not read the trial court's order as holding that only one jury issue exists. Rather, we interpret the order as finding that summary judgment was precluded on the issue of White Water's vicarious liability because *at least* one jury issue exists. Accordingly, we find no error.

2. Nelson and Harvey next assert that it was error for the trial court to grant summary judgment to White Water on the issue of negligent supervision. They assert that jury issues remain as to whether White Water exercised ordinary care in supervising its employees as they left the park for 30-minute break periods.

"In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." (Citation omitted.) *Vaughan v. Glymph*, 241 Ga. App. 346, 348 (526 SE2d 357) (1999). Therefore, Nelson and Harvey must first establish that White Water owed their decedents a legal duty.

In making their negligent supervision argument, Nelson and Harvey rely upon three basic theories: (1) the general duty to exercise ordinary care, citing OCGA § 51-1-12; (2) the duty of an employer to make its premises safe for its employees and to warn of dangers inherent to the premises or the nature of the job, citing, e.g., *Smith v. Ammons*, 228 Ga. 855 (188 SE2d 866) (1972); *Church v. SMS Enterprises*, 186 Ga. App. 791 (368 SE2d 554) (1988); and (3) the duty of an employer to control the actions of its employees on its premises so as to prevent forseeable injuries to third persons, citing *Great A & P Tea Co. v. Cox*, 51 Ga. App. 880 (181 SE 788) (1935); Restatement 2d of Torts, § 317.

While these authorities may impose general duties upon an employer to monitor and supervise its employees on its own premises in relation to the employer's customers and the employees' own safety, we find no authority establishing a general duty upon every employer to monitor and supervise its employees outside its premises for the protection of the driving public at large.

The evidence shows that the accident in this case occurred off White Water's premises and on a route chosen by the employee. Johnston was licensed by the State of Georgia to operate a car, and driving was not one of her regular job duties. Under these narrow circumstances, we agree with the trial court that White Water had no duty to monitor Johnston's driving practices or habits. Nor is there any

evidence that White Water was aware of any problems with John-ston's driving or any other factors that arguably could have imposed any duty of specialized supervision. See *Modern Woodmen of America v. Crumpton*, 226 Ga. App. 567, 569 (487 SE2d 47) (1997).

Nelson and Harvey argue, however, that White Water assumed a duty of supervision when it issued a policy directing its employees not to leave the premises during break periods. White Water presented evidence that this policy was announced to employees through a newsletter handed out with the employees' paychecks on July 7, 1995, approximately one month before the accident.[1] The newsletter noted that there had been "several fender benders and lit-tering incidents in the employee parking lot," and that "effective immediately" all employees were to remain on the park throughout the workday.

But uncontradicted evidence shows that this policy was intended to cut down on littering and fender benders in the employee parking lot itself and also to prevent delays in the lifeguard rotations caused by employees leaving the park. Therefore, the policy was aimed at monitoring and controlling activity occurring on the park premises. There is no evidence in the record that this policy was intended to prevent accidents occurring off the White Water premises and thus no evidence that White Water undertook a duty to protect third par-ties from such accidents.

Nelson and Harvey also argue that because White Water once owned the Business Park property and maintained an easement of ingress and egress over it, a jury issue exists as to whether they were on notice of allegedly dangerous conditions in exiting the property directly onto Cobb Parkway. But White Water did not own or main-tain the Business Park property at the time of the accident, and the accident occurred at a location outside its easement. Therefore, no additional duty on the part of White Water arose.

Thus, we find no error in the trial court's grant of summary judg-ment on the issue of White Water's liability for negligent supervision.

3. Nelson and Harvey also assert that the trial court erred in granting summary judgment to the Business Park based upon a find-ing that Johnston's failure to yield the right of way was the sole prox-imate cause of the collision. They contend that it was error for the trial court to focus on whether the Business Park's shrubbery impeded Johnston's view because there was evidence of other acts of negligence. They assert that jury issues exist as to whether the Busi-ness Park was negligent in not erecting traffic control signals at the intersection, in allowing young White Water employees to use its

---

[1] Neither Johnston nor Levine recalled receiving the newsletter.

premises, and in failing to route or direct such traffic to the alternate exit in accordance with White Water's easement.

While these arguments address allegedly negligent acts, the Business Park is not liable absent evidence that these acts proximately caused the collision. See *Keith v. Beard*, 219 Ga. App. 190, 192 (1) (464 SE2d 633) (1995) (even "[n]egligence per se does not mean liability per se"). " '[N]o matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable.' [Cits.]" *Bacon v. Mayor &c. of Savannah*, 241 Ga. App. 211, 213 (525 SE2d 115) (1999). See also *City Council of Augusta v. Booker*, 229 Ga. App. 566, 567 (1) (494 SE2d 374) (1997) (physical precedent only).

With regard to the shrubbery, Nelson and Harvey argue that the trial court failed to consider their expert testimony that the plantings hampered motorists' view of oncoming traffic, often causing them to creep forward into the acceleration/deceleration lane on Cobb Parkway and pressuring them to make a quicker decision as to when to turn. Nelson and Harvey also contend that the placement of the shrubbery was a per se violation of OCGA § 32-6-1, which prohibits any obstructions or encroachments upon public roads.

Nevertheless, there is no evidence that the shrubbery played any part in *this* particular accident. The evidence showed that Johnston, although aware of the alternate exit, chose not to make use of the traffic light, but instead to follow her habitual course of turning left directly onto Cobb Parkway. She came to a full stop at the intersection and stayed there for thirty seconds to one minute observing the traffic flow. Levine, who was sitting in the front passenger seat, testified that they could see the oncoming traffic from where they were stopped. Johnston, who said that she used the intersection regularly, testified that she could see oncoming traffic at that intersection. And Edward Motley and Craig Guyton, the drivers in the cars behind Johnston that day, both testified that, at the time, they often used the Business Park intersection and were able to see the oncoming traffic from the Business Park driveway. Motley testified that for Johnston not to see Nelson's car that day she "couldn't have been looking."

We recently affirmed summary judgment in favor of a property owner, under similar facts, where a collision occurred as one of the drivers was turning left out of a commercial drive onto a public roadway. The plaintiff there argued that greenery on the private property obstructed her view of oncoming traffic and that obstruction constituted negligence per se. We found that even assuming negligence per se, when the defendants presented evidence that the collision was

caused by the driver of the other car, the burden then shifted to the plaintiff to show an issue of fact:

> The burden of coming forward with some evidence as to the concurrent causation of the collision then shifted to [the plaintiff] to create an issue of fact from slight evidence that the vegetation constituted a concurrent causative factor in the collision. [Cits.] While the greenery may have caused some obstruction of vision . . . there existed an absence of any competent evidence that any possible obstruction . . . did, in fact, cause or contribute to the collision.

*Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 523 (1) (c) (529 SE2d 406) (2000). See also *Jackson v. City of Hahira*, 244 Ga. App. 322, 324 (535 SE2d 327) (2000). Because the plaintiff failed to produce any evidence of causation, the Court granted summary judgment to defendants. *Howard*, 242 Ga. App. at 523-524. "The mere occurrence of this collision and the presence of vegetation alongside the road do not create a concurrent proximate cause of the occurrence." Id. at 524 (1) (c).

Similarly, in this case the Business Park has produced evidence showing that Johnston's actions were the sole proximate cause of the accident, and Nelson and Harvey have failed to produce any evidence showing that the shrubbery blocked Johnston's view that day. Accordingly, they have failed to raise an issue of fact on the issue of causation.

Moreover, although Nelson and Harvey assert that the Business Park should have taken other steps to route the White Water employee traffic to a different exit, the evidence showed that Johnston was aware of the alternate route but chose not to take it. And the Business Park had no obligation to erect a traffic signal device at the intersection of its roadway with Cobb Parkway; that is a governmental obligation. *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163, 164 (2) (a) (433 SE2d 301) (1993). We have found that "[i]t is in fact unlawful for anyone other than those governmental entities listed in OCGA § 32-6-50 to erect traffic control devices. OCGA § 32-6-51 (a)." Id.

Even if issues of fact exist as to the Business Park's negligence, we agree with the trial court that those issues need not be reached in this case due to the lack of proximate cause. The trial court correctly granted summary judgment to the Business Park.

## Case No. A00A1946

4. White Water argues on cross-appeal that the trial court erred in denying it summary judgment because no issue of fact exists as to

whether Johnston was acting within the course of her employment at the time of the accident. We agree.

The test for determining whether an employer is liable for its employee's actions is whether the employee was acting in the scope of her employment and on the business of the employer at the time of the injury. *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000). Stated another way, "the test of liability is whether the tort was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment." *Rogers v. Fred R. Hiller Co. &c.*, 214 Ga. App. 448 (1) (448 SE2d 46) (1994). But where a tort occurs while an employee has stepped aside from his employer's business to do an act entirely disconnected from that business, the employer has no liability. Id.

The accident in this case occurred after Johnston left White Water's premises on her way to get lunch. We have previously held that where an employee takes a break for lunch and is not otherwise engaged in his employer's business, the employee is on a purely personal mission. In *Aubrey Silvey Enterprises v. Bohannon*, 182 Ga. App. 738 (356 SE2d 693) (1987), the evidence showed that an employee spent his morning ordering parts and planned to pick them up after a lunch with his wife. The employee had an accident on the way to the florist to pick up flowers to give his wife at lunch. This Court found that at the time of the collision, the employee "was engaged in a personal mission unrelated to his employment." Id. at 740. And the fact that he may have been planning to pick up the parts after his lunch did not alter the nature of his actions at the time of the accident. Id. See also *Hargett's Tel. Contractors v. McKeehan*, 228 Ga. App. 168, 170 (491 SE2d 391) (1997); *Reese v. Ga. Power Co.*, 191 Ga. App. 125, 129 (3) (381 SE2d 110) (1989). Nor does the fact that the employee is paid during the break change a personal mission into one on behalf of the employer. *Bedford v. Awod*, 248 Ga. App. 28, 30-31 (3) (545 SE2d 162) (2001).

We are not persuaded by the argument that Johnston was acting for White Water's benefit because she was on a paid break and seeking nourishment to better perform her job duties. It goes without saying that an employee who is well rested and well fed is likely to perform better than an employee who is not. White Water's policy of providing regular breaks for its lifeguards was simply a recognition of this fact. But it would be extending the scope of employment too far to hold that an employer is liable for an employee's actions in performing a routine task such as getting food simply because the employer may receive an incidental benefit from the employee's taking nourishment. The primary beneficiary of such a task is the employee himself, who receives the nourishment.

Nelson and Harvey also assert, however, that the evidence

raised an issue of fact as to whether Johnston was on a business-endorsed errand for her supervisor at the time of the accident. As stated above, the trial court found a conflict between Johnston's statement to police that she was on an errand for her supervisor and her later testimony that any such errand was personal in nature.

As an initial matter, we note that Johnston's statements are not in conflict, but rather are entirely consistent. She told police that she was on an errand for her supervisor, without explaining what the errand was. In her deposition testimony, she stated that the errand was a personal one. Her testimony thus clarifies her earlier statement to police; it does not contradict it.

But even if Johnston's statements could be interpreted as being in conflict, no jury issue exists because there is absolutely no evidence that any errand she may have been engaged in was work-related. To the contrary, Johnston testified that she had planned to go to a fast food restaurant and return directly to White Water. She stated that she may have been planning to pick up a milkshake for her supervisor or food for other people, although she could not specifically recall at the time of her deposition. And she acknowledged that she had brought food back to her supervisor on one occasion, but that she considered it a personal favor. The supervisor herself testified that she made no request for Johnston to bring her anything. When Johnston asked her if she wanted anything from the fast food place, she declined the offer and, in fact, told Johnston not to leave the park. Thus, there is absolutely no evidence that the supervisor asked Johnston to drive off the park for a work-related errand on the day of the accident.

Nor does the evidence that Johnston may have been on a personal errand for her supervisor create an issue of fact as to White Water's vicarious liability. The fact that some of her fellow employees may have personally benefitted from her lunch trip is not evidence that Johnston was on White Water's business during her lunch break. See *Chorey, Taylor & Feil v. Clark*, 273 Ga. at 145.

And we find distinguishable those cases imposing vicarious liability during an employee's ingress and egress from his job. In those cases, an employer may be liable only where the employee was still on the employer's premises at the time of the accident. See, e.g., *Beverly v. J. H. Harvey Co.*, 237 Ga. App. 21 (515 SE2d 404) (1999) (physical precedent only); *Southern Bell Tel. &c. Co. v. Conyers Toyota*, 190 Ga. App. 792, 793 (1) (380 SE2d 296) (1989). That was not the case here.

Therefore, there is no evidence that Johnston was acting within the scope of her employment at the time of the accident. And the trial court erred in denying White Water's motion for summary judgment on the issue of vicarious liability.

*Judgment affirmed in part and reversed in part. Miller and Mikell, JJ., concur.*

DECIDED MARCH 30, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001

*Pope, McGlamry, Kilpatrick & Morrison, William U. Norwood III, Jay F. Hirsch, David S. Bills,* for appellants.

*Webb, Carlock, Copeland, Semler & Stair, Brian R. Neary, Boyd B. Newton, Lokey & Smith, Malcolm Smith, Jon W. Burton,* for appellees.