A06A1637. MORTON et al. v. HORACE MANN INSURANCE COMPANY.
(639 SE2d 352)

ADAMS, Judge.

Jo Ann Morton and Albert W. Morton appeal following the trial court's grant of a directed verdict on their claims against Horace Mann Insurance Company for injuries arising out of a traffic accident involving Mrs. Morton. The Mortons are husband and wife and represent themselves pro se.

This is the second appearance of this matter before this Court. The Court's prior opinion held that venue in this case was proper in Fulton County and that the case had been improperly transferred to Gwinnett County. *Morton v. Fuller*, 264 Ga. App. 799, 800 (2) (592 SE2d 460) (2003).

The Mortons filed their claim as a direct suit against Horace Mann to recover under the uninsured motorist provisions of an automobile insurance policy. The original complaint did not name Terry Franklin Fuller, the other driver involved in the accident, but the Mortons later amended their complaint to add him as a party and served him with the amended pleading. In the earlier appeal, however, this Court stated that the Mortons' attempt to add Fuller without a court order was unauthorized. *Morton v. Fuller*, 264 Ga. App. at 801 (2). Upon remand, the Mortons moved to add Fuller as a party defendant, and the trial court granted that motion. But the Mortons failed to perfect service of the complaint upon Fuller. There is no evidence that they even attempted such service, and Fuller never entered an appearance in the action. Thus, the case proceeded to a jury trial with only the Mortons and Horace Mann as parties.

The Mortons were the only witnesses at trial. Mrs. Morton was driving alone at the time of the accident; her husband was not present. She testified that on May 15, 1999, she was at an intersection in Fulton County, waiting at a stop light for her opportunity to make a left turn. The stop light had a separate left turn arrow. While Mrs.

Morton waited, the left turn arrow cycled off, leaving only the green light. She pulled her car into the intersection "a little bit," waiting for the chance to turn left. She could see the traffic light in front of her, and she had an unobstructed view of the intersection. After Mrs. Morton saw the traffic light turn red and observed an oncoming car on the opposite side of the intersection that appeared to be slowing to a stop, she proceeded with her turn. She did not observe any other vehicles.

As Mrs. Morton made the turn, her car was struck by Fuller's truck as it came through the intersection from the opposite direction. She stated that she did not see the truck until it was "right there on" her, but she believed that it was coming fast. The impact of the collision caused Mrs. Morton to lose control of her car, causing it to spin across two other lanes of traffic and hit a tree. As a result of the accident, Mrs. Morton sustained severe bruising, a broken wrist and substantial injuries to her legs, which left scars and affected her ability to walk.

Mr. Morton testified that he went back to the scene five to seven days after the accident to determine what happened. The Mortons introduced into evidence photographs taken by Mr. Morton of the tree and of skid marks that he believed had been left by Fuller's truck. He also testified about the impact of the accident on their lives and produced a photograph of the damage to his wife's car. At the close of the Mortons' case, the trial court granted Horace Mann's motion for directed verdict.

1. The Mortons contend that the trial court erred in granting that motion.

> A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable inferences therefrom demands a particular verdict. On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the "any evidence" standard.

(Citation, punctuation and footnote omitted.) *Augusta Country Club v. Blake*, 280 Ga. App. 650, 651 (1) (634 SE2d 812) (2006). "In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." (Citation and punctuation omitted.) *Nelson v. Silver Dollar City*, 249 Ga. App. 139, 141 (2) (547 SE2d 630) (2001). Thus, Mrs. Morton was required to show that Fuller owed her a duty, that Fuller breached that duty, and that the breach proximately caused the accident, resulting in her injuries.

Mrs. Morton provided the only competent evidence of the events surrounding the accident,[1] but she testified only that Fuller's truck struck her car, that the impact caused her car to spin and crash into a tree, and that she was injured. She conceded that she had no personal knowledge of what Fuller's truck was doing prior to the impact with her vehicle. Although she believed he was going fast at the time, there was no evidence to show how fast he was going and thus no evidence as to whether he was exceeding the speed limit. In fact, the Mortons offered no evidence demonstrating the speed limit on the road at issue. And though Mrs. Morton believed that Fuller changed lanes before entering the intersection, there was no evidence that any such lane change was improper under the circumstances. Further, while Mrs. Morton believed that Fuller ran the red light, there was no testimony as to what the light showed on Fuller's side when he entered the intersection. In any event, Mrs. Morton admitted that she herself ran the red light when she made her left turn. Mr. Morton visited the accident site several days later and formed an opinion as to what he believed had occurred, but he conceded that he had no formal training in accident reconstruction.

We agree with the trial court that this evidence failed to establish either that Fuller acted negligently or that his actions caused the accident. The evidence established only that an accident occurred and that Mrs. Morton was injured. This is insufficient to state a claim for negligence. "That an accident occurred and a plaintiff suffered injury establishes no basis for recovery unless the plaintiff comes forward with evidence showing that the accident was caused by the defendant's negligence." (Citations omitted.) *Dawkins v. Doe*, 263 Ga. App. 737, 739 (1) (589 SE2d 303) (2003). See also *Davis v. Sykes*, 265 Ga. App. 375, 376 (1) (593 SE2d 859) (2004).

The Mortons argue, however, that inferences arising from Mrs. Morton's testimony establish the claim for negligence. But when a party relies upon inferences to prove his claim, "not only must those inferences tend in some proximate degree to establish the conclusion sought, but must also render less probable all inconsistent conclusions." (Citation and punctuation omitted.) *Dawkins v. Doe*, 263 Ga. App. at 740 (1). Thus, any circumstantial evidence must be sufficient to raise a reasonable inference that Fuller's negligence caused the accident. If the evidence raises only a mere conjecture as to how the accident occurred, no recovery is available. Id. The circumstantial evidence in this case leads to nothing more than conjecture as to

---

[1] Although Mr. Morton made some reference to an accident reconstruction expert's report and both parties referred to the narrative portion of the police report, such evidence was inadmissible under the circumstances of this case. OCGA § 24-3-1; *Brown v. State*, 274 Ga. 31, 35-36 (1) (549 SE2d 107) (2001).

Fuller's actions before his truck hit Mrs. Morton's car. It would be mere speculation, for example, to conclude, based upon the evidence, that Fuller was speeding. And as Mrs. Morton conceded at trial, "[f]or all we know, another vehicle could have hit [Fuller's truck], propelling [it] into [Mrs. Morton's car]." (Footnote omitted.) *Davis v. Sykes*, 265 Ga. App. at 376 (1).

Accordingly, we find no error in the trial court's decision to direct a verdict in favor of Horace Mann.[2]

2. The Mortons also assert that the trial court erred in granting Horace Mann's motion in limine to exclude certain evidence, arguing that the trial court's rulings hampered their ability to present their case. The record contains no written order on the motion in limine and neither party arranged to record or transcribe the pre-trial hearing, during which the motion was addressed. But to the extent that the record otherwise reflects the rulings made on the motion in limine, we will address them.

(a) The Mortons first assert that the trial court wrongfully prevented them from testifying as to any medical diagnoses, and specifically ruled that no reference could be made to any fractures Mrs. Morton sustained. The trial transcript reflects that the court restricted the Mortons' testimony as to medical diagnoses on the ground that any such evidence would be hearsay. The trial court was correct that any medical evidence conveyed to them by Mrs. Morton's doctors would be hearsay. OCGA § 24-3-1. Moreover, "[t]he diagnosis and treatment of injury and disease are essentially medical questions to be established by physicians as expert witnesses and not by laymen." (Citation omitted.) *Autry v. Gen. Motors BOP Assembly Plant*, 85 Ga. App. 500, 502 (69 SE2d 697) (1952). See also *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 518 (1) (352 SE2d 832) (1987); *Thomason v. Willingham*, 118 Ga. App. 821, 825 (2) (165 SE2d 865) (1968).[3]

Despite the restriction as to medical evidence, however, the Mortons were able to introduce evidence of Mrs. Morton's injuries as they perceived them. Mrs. Morton was even allowed to testify that she had a broken wrist, because she could observe that her hand hung

---

[2] Because we have found that a directed verdict was proper on the ground that the Mortons did not establish negligence, we need not address the issue of whether a directed verdict was proper on the ground that the Mortons failed to prove their damages.

[3] We note that on the day of trial, the judge gave the Mortons the option of dismissing the action with leave to file at a later time, to allow them time to secure a medical witness, but the Mortons insisted on proceeding to trial despite the judge's admonition that such a course may not be in the best interest of their case and despite defendant's counsel's offer to acknowledge service of a new action.

limply after the accident. And although Mrs. Morton was not permitted to say that she had broken both legs, she testified that both legs and her broken arm were placed in casts for four to six weeks. She also introduced photographs showing the scars she sustained from these injuries. We find no error.

(b) The Mortons also claim that the trial court erred in preventing them from mentioning their insurance contract with Horace Mann and in omitting the word "Insurance" from Horace Mann's name, instead referring to the company as "the Horace Mann Companies." In a related enumeration of error, the Mortons claim that they were prevented from pursuing their contract claims at all.

The pre-trial order limited the trial to Mrs. Morton's tort claims for personal injury and property damage and Mr. Morton's loss of consortium claim. The portions of the consolidated pre-trial order relating to the Mortons' contract claims were struck by hand and the changes initialed by Albert Morton and by Horace Mann's counsel. The judge reiterated this deletion at trial, telling the Mortons that they were not allowed to refer to the contract of insurance, and if they even mentioned insurance, "we're going home."

Because no record of the pre-trial hearing exists, we have no explanation for the decision to proceed to trial only on the tort claims. But it is well settled that an injured party first must establish that the driver of the uninsured vehicle is legally liable to him or her for the accident before recovery is allowed under uninsured motorist coverage. OCGA § 33-7-11 (a) (1); *Kent v. State Farm &c. Ins. Co.*, 233 Ga. App. 564, 565 (1) (504 SE2d 710) (1998). And to the extent that the Mortons were asserting a claim for bad faith against Horace Mann, such a claim had to be filed in a separate action after the Mortons obtained judgment against Fuller. OCGA § 33-7-11 (j).

Because the Mortons were first required to establish that Fuller was liable to them for the accident before seeking recovery against Horace Mann, the liability issue had to be litigated prior to litigating the Mortons' contract claim. Accordingly, the trial court separated the determination of Fuller's liability from the determination of Horace Mann's liability under the insurance policy.[4] But there is nothing in the record to indicate that this procedure was intended to prevent the

---

[4] The fact that Fuller did not participate in trying the liability issue was due to the Mortons' failure to perfect service upon him after he was formally made a party to the action. The Mortons' service upon Fuller prior to his being made a party defendant was not sufficient. "The grant of a motion to amend the complaint to add a party does not dispense with the requirement that such party be properly served with summons in the lawfully prescribed manner; this requirement remains though the added party has actual knowledge of the pending suit." (Citation omitted.) *HAP Farms, Inc. v. Heard*, 209 Ga. App. 684, 685 (1) (a) (434 SE2d 118) (1993). Thus, we find no merit to the Mortons' claim that the trial court erred in "arbitrarily" re-styling the case for trial to exclude Fuller as a party.

Mortons from pursuing their contract claim at a later time if they successfully established Fuller's liability. We find no error in this procedure under the circumstances of this case and no merit to the Mortons' argument that they were wrongfully prevented from pursuing their contract claims.

The purpose of the trial, therefore, was simply to determine whether Fuller's negligence caused the accident, making him liable for Mrs. Morton's injuries. "In [such] an ordinary negligence case, not only is a liability insurance policy of a litigant not admissible in evidence, but disclosure to the jury of the mere existence of [a] contract is ground for a mistrial." (Punctuation and footnote omitted.) *Mintah v. Arms*, 251 Ga. App. 572, 573 (3) (a) (555 SE2d 466) (2001). Accordingly, we find no error in the trial court's decision to exclude references to insurance at trial.

(c) The Mortons also claim that it was error to prevent Mr. Morton from talking about his wife's accident. We find no error. Mr. Morton was not competent to provide direct testimony as to the events surrounding the accident because he was not there when it occurred. He was allowed to testify, however, as to his actions in visiting the scene of the crime and in hiring an accident reconstruction expert. He was also allowed to introduce photographs he took of Mrs. Morton's car, as well as damage to the tree and skid marks that Mr. Morton believed related to the accident. The Mortons were also allowed to introduce a copy of the police report, the narrative portion of which contradicted their version of events, and Mr. Morton was allowed to explain why he thought it was wrong. In this manner, Mr. Morton was allowed to introduce evidence of what he believed had transpired at the time of the accident. Pretermitting whether this evidence was properly admitted, we find no merit to the Mortons' argument that they were harmed by the trial court's rulings as to Mr. Morton's testimony regarding the accident.

3. And in a somewhat related enumeration of error, the Mortons claim that the trial court violated the sanctity of their marriage by not allowing Mr. Morton to speak for his wife at trial. Instead, the trial court ruled that because they were appearing pro se, Mrs. Morton would have the responsibility of proving her own claims and that Mr. Morton would have to prove his claim of loss of consortium.

We find no error. The Mortons chose to pursue their claims without legal representation. And only a person who is a duly licensed attorney may represent another person in a legal proceeding. OCGA § 15-19-51 (a) (1). Thus, Mr. Morton, who is not an attorney, was not qualified to represent his wife in this proceeding. See *Rice v. Lightmas*, 259 Ga. App. 380 (1) (577 SE2d 2) (2003); *Gamble v. Diamond "D" Auto Sales*, 221 Ga. App. 688, 689 (3) (472 SE2d 446) (1996). Mr. Morton contends, however, that this placed an inordinate burden

upon Mrs. Morton because she had to prove the negligence claim from which his loss of consortium claim derived. But nothing in the trial court's enforcement of the requirement that a pro se party prove his own case restricted Mr. Morton from introducing competent evidence in support of his own claim. Moreover, Mr. Morton testified in support of Mrs. Morton's case, primarily in narrative form, and stated on the record that he felt his wife had done an "exceptional" job in presenting her case.

4. The Mortons further assert that the trial court erred in failing to rule on their notice to produce. There is some indication that discovery matters were addressed at the party's pre-trial conference when Horace Mann produced a tape of a witness interview, albeit a tape the Mortons claimed was unusable. The pre-trial order, however, indicated that the discovery motion was still pending. Nevertheless, the Mortons made no reference to any pending discovery motion when they announced that they were ready for trial. And they do not direct this Court's attention to any documents that they claim Horace Mann failed to supply them. "On appeal, a party must show harm as well as error. Because [the Mortons have] not shown harm as a result of this alleged error, [their] argument is without merit." (Citation omitted.) *Phillips v. State*, 267 Ga. App. 733, 737 (4) (b) (601 SE2d 147) (2004).

5. The Mortons also contend that the trial court erred in denying their motion for costs in connection with Horace Mann's unsuccessful attempt to transfer the case to Gwinnett County, the issue addressed in this Court's original opinion. Under OCGA § 5-6-5, an appellant who secures a reversal on appeal is entitled to a judgment for the amount of his appellate costs "as soon as the remittitur is returned to the court below." This language has been interpreted as requiring that a party seeking such costs make his motion within a reasonable time after the return of the remittitur. *Dept. of Med. Assistance v. Llewellyn*, 197 Ga. App. 231 (1) (398 SE2d 256) (1990).

The remittitur from the earlier appeal was returned on January 6, 2004. But the Mortons waited until April 26, 2004, three months and twenty days later, to file their motion for costs. In addition, they sought recovery for appellate expenses in excess of those allowed under OCGA § 5-6-5, as not all expenses of appeal are recoverable under this statute.[5] See *Stone Mt. Mem. Assn. v. Stone Mt. Scenic R.*, 232 Ga. 92 (205 SE2d 293) (1974). Under these circumstances, we cannot say that the trial court abused its discretion in denying the Mortons' motion for appellate costs. *Ponse v. Atlanta Cas. Co.*, 270 Ga.

---

[5] For example, they sought to recover $10 per page for the preparation of their appellate briefs.

App. 122, 125 (3) (605 SE2d 826) (2004) (motion for appellate costs untimely where filed eight months after remittitur returned). Compare *Dept. of Med. Assistance v. Llewellyn*, 197 Ga. App. at 231 (1) (delay of around 20 days after remittitur not untimely).

　　*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 15, 2006 —
RECONSIDERATION DENIED DECEMBER 6, 2006 — 

Jo Ann Morton, *pro se.*
Albert W. Morton, *pro se.*
*William C. Rhodes*, for appellee.